# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**Opinion Number: 2021-NMCA-053**

**Filing Date: March 31, 2021**

**Nos. A-1-CA-37459, A-1-CA-37483, A-1-CA-37969
(consolidated for purpose of opinion)**

**AUTOVEST, L.L.C.,**

Plaintiff-Appellant,

v.

**DEBRA M. AGOSTO and DEBBIE M. AGOSTO,**

Defendants-Appellees.

and

**AUTOVEST, L.L.C.,**

Plaintiff-Appellee,

v.

**MARIA ESTRADA,**

Defendant-Appellant,

and

**FRANK RIVERA, JR.,**

Defendant.

and

**AUTOVEST, L.L.C.,**

Plaintiff-Appellant,

v.

**DEBRA M. AGOSTO and DEBBIE M. AGOSTO,**

Defendants-Appellees.

**APPEALS FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Mary W. Rosner, District Judge**

Certiorari Granted, October 12, 2021, No. S-1-SC-38834. Released for Publication November 9, 2021.

Jenkins & Young, P.C.
Jody D. Jenkins
Lubbock, TX

Simmonds & Narita LLP
Michael R. Simmonds
R. Travis Campbell
San Francisco, CA

for Autovest, L.L.C.

Hanratty Law Firm
Kevin J. Hanratty
Artesia, NM

for Appellee Debbie M. Agosto

Kenneth L. Beal
Las Cruces, NM

for Appellee Debra M. Agosto

Law Office of Jane B. Yohalem
Jane B. Yohalem
Santa Fe, NM

for Appellees Agosto

Kevin J. Hanratty
Artesia, NM

Kenneth L. Beal
Las Cruces, NM

Law Office of Jane B. Yohalem
Jane B. Yohalem
Santa Fe, NM

for Appellant Maria Estrada

**OPINION**

**DUFFY, Judge.**

**{1}**     In this opinion we address related appeals arising from two district court cases involving the same Plaintiff, Autovest LLC, and its pursuit of deficiency actions against borrowers who defaulted on automobile purchase contracts.[1] A common issue arose in both cases: whether a partial payment revived the limitations period for a cause of action under Article 2 of New Mexico's Uniform Commercial Code (UCC)—NMSA 1978, Section 55-2-725(1) (1961). The district courts reached conflicting decisions on the question. In *Autovest I*, the court concluded that Autovest's complaint was time-barred and dismissed the complaint with prejudice, whereas in *Autovest II*, the court concluded that a partial payment revived the limitations period and entered judgment in favor of Autovest. We hold that the partial payment revival statute, NMSA 1978, § 37-1-16 (1957), does not operate to toll the limitations period in Section 55-2-725. Therefore, we affirm the dismissal of Autovest's complaint in *Autovest I* and reverse the judgment in favor of Autovest in *Autovest II*.

**{2}**     Autovest additionally challenges the district court's attorney fee decisions in *Autovest I*. Because we conclude the district court erred in its disposition of both parties' fee requests, we reverse and remand for further consideration of those matters.

**BACKGROUND**

**I.     *Autovest I***

**{3}**     In June 2006, Defendants Debra and Debbie Agosto, mother and daughter (hereinafter, the Agostos), bought a used Saturn L200 from a dealer pursuant to a sales contract and purchase money security agreement. The Agostos financed approximately $14,000 to complete the purchase and agreed to repay this debt in monthly installments. The dealer assigned its interest in the agreement to Wells Fargo Auto Finance, Inc., which in turn assigned it to Wells Fargo Bank, N.A. (Wells Fargo). The Agostos defaulted in 2008. Wells Fargo repossessed and sold the vehicle that winter, but a deficiency of approximately $9,000 remained. Wells Fargo assigned its interest in the agreement to Autovest in January 2011.

**{4}**     Autovest referred the debt to a collection agency, which obtained a payment of $1,000 from Debra via check dated February 25, 2011. Autovest filed suit for the remaining deficiency on June 5, 2014. Debbie[2] answered and asserted as an affirmative

---

1This opinion resolves three appeals: two appeals arose from Dist. Ct. No. D-307-CV-2014-01148—No. A-1-CA-37459 and No. A-1-CA-37969—and are hereinafter referred to collectively as *Autovest I*. A third appeal, No. A-1-CA-37483, arose from Dist. Ct. No. D-307-CV-2013-00164 and is hereinafter referred to as *Autovest II*. Because the district court cases involve an identical issue of law, we consolidate these appeals for decision. *See* Rule 12-317(B) NMRA.

2Another attorney filed a limited entry of appearance on behalf of Debra. More than a year later, this attorney filed an answer and counterclaims on behalf of Debra that were similar to Debbie's answer and counterclaims. Autovest moved to strike this filing as untimely and the district court granted this motion.

defense that the complaint was barred by the statute of limitations. She also counterclaimed, alleging that Autovest violated New Mexico's Unfair Practices Act (UPA), NMSA 1978, §§ 57-12-1 to -26 (1967, as amended through 2019), and committed tortious debt collection by "willfully . . . filing time-barred complaints."

**{5}**     Autovest moved for summary judgment on Debbie's counterclaims, arguing, among other things, that its lawsuit was not barred by the applicable four-year statute of limitations because Debra's $1,000 payment revived the limitations period pursuant to Section 37-1-16, and the complaint was filed within four years of her payment. At the hearing on the motion, the district court granted Autovest's motion but also, sua sponte, dismissed Autovest's complaint. The district court reasoned that although Section 37-1-16 is applicable to a claim under Article 2 of the UCC, the statute requires both a partial payment and a writing to revive the limitations period. According to the court, Autovest had not provided evidence that Debra's payment was accompanied by an admission in writing or a new promise to pay.[3]

**{6}**     Following the district court's ruling, the Agostos submitted billing statements and fee affidavits collectively seeking over $115,000 in attorney fees pursuant to NMSA 1978, Section 39-2-2 (1981). The district court awarded attorney fees to the Agostos in the amount of $39,111.27. Autovest also sought attorney fees of over $143,000 for successfully defending against Debbie's UPA counterclaim. The district court declined to award a monetary judgment in favor of Autovest, saying that "an award of attorneys' fees to Autovest, LLC is reflected in the [c]ourt's reduction of the attorneys' fees sought by Debra Agosto and Debbie Agosto by two-thirds." Autovest appeals.

## II.     *Autovest II*

**{7}**     In August 2007, Defendant Maria Estrada executed a motor vehicle retail installment contract in the amount of approximately $17,900 for the purchase of a 2006 Nissan Frontier truck. As in *Autovest I*, the dealer assigned the contract to Wells Fargo Auto Finance, Inc., which then assigned its interest to Wells Fargo Bank, N.A. Estrada defaulted in September 2008. Wells Fargo repossessed the truck and sold it in January 2009, but a deficiency of approximately $9,100 remained. Wells Fargo received a payment in the amount of $999.20 on February 6, 2009, shortly after the truck was sold at auction. This was the last payment on the account. As with the Agostos' contract, Wells Fargo assigned its interest in the Estrada contract to Autovest in January 2011; Autovest filed suit for the remaining deficiency on January 18, 2013.

---

3The Agostos acknowledge that the district court's reading of Section 37-1-16 "conflicts with the decisions of this Court construing that section" and do not advance the district court's reasoning on appeal. *See Joslin v. Gregory*, 2003-NMCA-133, ¶¶ 12, 14, 134 N.M. 527, 80 P.3d 464 (stating that "New Mexico, unlike some other jurisdictions, permits revival by way of an admission even where the debtor's acknowledgment does not constitute a new promise, for example, where the admission is accompanied by an expression of unwillingness to pay" and affirming that a partial payment may constitute an admission through non-verbal conduct). However, we "may affirm a district court if it was right for any reason and affirming on new grounds would not be unfair to the appellant." *Wild Horse Observers Ass'n, Inc. v. N.M. Livestock Bd.*, 2016-NMCA-001, ¶ 29, 363 P.3d 1222.

**{8}** Estrada moved for summary judgment, arguing that Autovest's complaint was time-barred because it was filed more than four years after the date of default. In response, Autovest argued that the February 6, 2009, payment revived the statute of limitations pursuant to Section 37-1-16 such that the complaint, filed within four years of that payment, was timely. The district court orally denied Estrada's motion at the hearing, finding that Section 37-1-16 applied but that disputed issues of material fact remained as to when and how the final payment was made. After a bench trial later that year, the district court found that Estrada or her agent had made a voluntary payment of $999.20 on February 6, 2009, and concluded that the payment had revived the statute of limitations pursuant to Section 37-1-16. The court entered judgment in favor of Autovest on its breach of contract claim, awarding $9,153.54 for the deficiency and $48,650.75 for attorney fees, plus prejudgment and postjudgment interest. Estrada appeals.

## DISCUSSION

### I. Section 37-1-16 Does Not Apply in an Action Governed by Section 55-2-725

**{9}** We first address the common question raised in these appeals: whether Defendants' partial payments revived the statute of limitations and started the clock anew from the date of the last payment. Where, as here, "facts relevant to a statute of limitations issue are not in dispute, the standard of review is whether the district court correctly applied the law to the undisputed facts." *Haas Enters., Inc. v. Davis*, 2003-NMCA-143, ¶ 9, 134 N.M. 675, 82 P.3d 42. "We review questions of law de novo." *Id.*

**{10}** It is undisputed in these cases that an action to recover a deficiency on a motor vehicle installment contract is governed by Article 2 of the UCC and subject to the four-year statute of limitations set forth in Section 55-2-725:

> (1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.

> (2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance, the cause of action accrues when the breach is or should have been discovered.

> (3) Where an action commenced within the time limited by Subsection (1) is so terminated as to leave available a remedy by another action for the same breach, such other action may be commenced after the expiration of the time limited and within six months after the

termination of the first action unless the termination resulted from voluntary discontinuance or from dismissal for failure or neglect to prosecute.

   (4) This section does not alter the law on tolling of the statute of limitations nor does it apply to causes of action which have accrued before this act [this chapter] becomes effective.

*Id.*; *see First Nat'l Bank v. Chase*, 1994-NMSC-127, ¶¶ 9, 11, 118 N.M. 783, 887 P.2d 1250 (holding that the four-year statute of limitations in Section 55-2-725 governs a suit for deficiency following repossession and sale of an automobile). There is also no dispute that Autovest filed each lawsuit more than four years after the actions accrued— i.e., four years after each defendant first breached its installment contract by failing to make an installment payment. *See* § 55-2-725(2).

**{11}** Nevertheless, Autovest maintains that its complaints are timely because Defendants' partial payments operated to start the running of the statute anew. Autovest points out that Section 55-2-725(4) incorporates New Mexico's "law on tolling of the statute of limitations" for Article 2 claims and argues that such "law on tolling" includes New Mexico's revival statute, Section 37-1-16.[4] Section 37-1-16 provides in relevant part:

---

[4]New Mexico courts have referred to Section 37-1-16 as both a "tolling" and a "revival" statute for over a century. *See Citizens Bank of Clovis v. Teel*, 1987-NMSC-087, ¶ 10, 106 N.M. 290, 742 P.2d 502 (considering, as part of its analysis of Section 37-1-16, the principle "that a statute which tolls the statute of limitations should be liberally construed to reach the merits if possible"); *Pugh v. Heating & Plumbing Fin. Corp.*, 1945-NMSC-031, ¶ 30, 49 N.M. 234, 161 P.2d 714 ("There is no evidence in the case at bar that [the attorney for the plaintiff] was specifically authorized by the plaintiff to make any admissions that the judgment was due and unpaid, or authorized to make such admissions as would have the effect to toll or remove the statute of limitations."); *Joyce-Pruit Co. v. Meadows*, 1921-NMSC-108, ¶ 9, 27 N.M. 529, 203 P. 537 ("To say that the admission is ineffective to toll the statute because the statute has already run and the debtor intends to avail himself of it is to reason in a circle."); *Cleland v. Hostetter*, 1905-NMSC-008, ¶ 12, 13 N.M. 43, 79 P. 801 ("Unlike the statute of James, our statute in terms provides that either a new promise or an acknowledgment may revive the action; and, not content with leaving no uncertainty or to diversity of authority the scope of the acknowledgment necessary to toll the statute, it in terms provides that 'an admission that the debt is unpaid' shall have that effect."); *Reymond v. Newcomb*, 1900-NMSC-016, ¶ 2, 10 N.M. 151, 61 P. 205 ("[D]oes a part payment of principal or interest on a promissory note within the period of the statute of limitations toll the statute?"); *Lea Cnty. State Bank v. Markum Ranch P'ship*, 2015-NMCA-026, ¶ 11 n.1, 344 P.3d 1089 (noting that "tolling" is one "[o]ther similar term[] for 'revival' " that was used by authorities relied on by the Court in its analysis of Section 37-1-16); *Joslin v. Gregory*, 2003-NMCA-133, ¶ 11, 134 N.M. 527, 80 P.3d 464 (indicating that "the concept that permits a debtor's actions to toll the statute of limitations" is important to an analysis of Section 37-1-16). Such usage is imprecise; our appellate courts have attempted to clarify the difference. *Compare Lea Cnty. State Bank*, 2015-NMCA-026, ¶ 11 ("When a debt is revived, the statute of limitations starts anew."), *with Schultz ex rel. Schultz v. Pojoaque Tribal Police Dep't*, 2013-NMSC-013, ¶ 14, ___P.3d___ ("Tolling interrupts the time of a period for the limitations of action under a statute of limitations, effectively adding on time to commence an action after the moment when the statute would otherwise have barred an action. Tolling persists as long as the cause of the tolling persists, and when that cause ends, the calculation of time under the statute commences again." (omission, internal quotation marks, and citation

Causes of action founded upon contract shall be revived by the making of any partial or installment payment thereon or by an admission that the debt is unpaid, as well as by a new promise to pay the same; but such admission or new promise must be in writing, signed by the party to be charged therewith.

Autovest contends that when measured from the date of the last payment, its complaints were timely filed within four years. Defendants counter that Section 37-1-16 does not apply to an Article 2 action based on the plain language of its statutory neighbor, NMSA 1978, Section 37-1-17, (1880), which provides:

*None of the provisions of this chapter shall apply to any action or suit which, by any particular statute of this state, is limited to be commenced within a different time*, nor shall this chapter be construed to repeal any existing statute of the state which provides a limitation of any action; but in such cases the limitation shall be as provided by such statutes.

(Emphasis added.)

**{12}** This Court has recognized that the emphasized language is unambiguous, making interpretation unnecessary. *See Noriega v. City of Albuquerque*, 1974-NMCA-040, ¶ 8, 86 N.M. 294, 523 P.2d 29 (stating that NMSA 1953, Section 23-1-17 (1880), recompiled as Section 37-1-17, "is unambiguous; there is no room for construction"); *see also State ex rel. Helman v. Gallegos*, 1994-NMSC-023, ¶ 24, 117 N.M. 346, 871 P.2d 1352 (stating that "a statute, clear and unambiguous on its face, need not and cannot be interpreted by a court" (internal quotation marks and citation omitted)). Applying the plain statutory language, our Supreme Court has observed that Section 37-1-17 applies whenever an action is governed by any particular statute of limitation outside of NMSA 1978, Sections 37-1-1 to -19 (1880, as amended through 2015). *See Romero v. N.M. Health & Env't Dep't*, 1988-NMSC-073, ¶ 14, 107 N.M. 516, 760 P.2d 1282 (construing former compilation and stating that " 'any particular statute of this state,' to which reference is made in Section [37-1-17], would be a statute outside of those sections included within Sections [37-1-1 to -19] that were enacted originally under [1880 N.M. Laws, ch. 5, §§ 1-19]"). Because the actions in the cases before us are governed by Section 55-2-725, which is outside of Sections 37-1-1 to -19, Section 55-2-725 is a "particular statute of this state" within the meaning of Section 37-1-17. Section 55-2-725 requires that an action for breach of a sales contract be commenced within four years rather than the six-year period that is generally applicable to actions on written contracts under Section 37-1-3(A). Therefore, by its plain terms, Section 37-1-17 renders the tolling provisions of Section 37-1-16 inapplicable to a claim subject to the limitations period in Section 55-2-725.

---

omitted)). However, because our courts have not strictly distinguished between "tolling" and "revival" in past applications of Section 37-1-16, we will not exclude consideration of Section 37-1-16 simply because it is titled a "revival" provision and not a "tolling" provision.

**{13}** Precedents applying Section 37-1-17 support this straightforward application of the plain language of the statute. For example, our courts have consistently held that when a lawsuit is governed by a particular statute of limitations outside of Sections 37-1-1 to -19, Section 37-1-17 prohibits application of the savings clause in Section 37-1-14, which allows a second suit following dismissal of the first to be "deemed a continuation of the first" under certain circumstances. In *Gathman-Matotan Architects & Planners, Inc. v. Dep't of Fin. & Admin.*, 1990-NMSC-013, ¶¶ 1, 4, 109 N.M. 492, 787 P.2d 411, our Supreme Court held that 37-1-17 prevented application of Section 37-1-14 in a contract action against the state governed by NMSA 1978, Section 37-1-23 (1976). The Court reasoned:

> Section 37-1-23(B) provides: "Every claim permitted by this section shall be forever barred unless brought within two years from the time of accrual." Therefore, under the express terms of Section 37-1-17, the limitations period is that provided in Section 37-1-23(B)—two years. Section 37-1-14 does not apply to lengthen this period.

*Gathman-Matotan Architects & Planners, Inc.*, 1990-NMSC-013, ¶ 4. The Court looked no further than whether "any particular statute of this state" limited the commencement of the suit at issue to a different time. *Id.* (emphasis, internal quotation marks, and citation omitted). Answering this question in the affirmative was "sufficient to thwart [the] plaintiff's attempt to invoke Section 37-1-14." *Id.* ¶ 5. Other cases are in accord. *See Estate of Gutierrez ex rel. Haney v. Albuquerque Police Dep't*, 1986-NMCA-023, ¶ 15, 104 N.M. 111, 717 P.2d 87 (holding that Section 37-1-14 is inapplicable to the Tort Claims Act), *overruled on other grounds by Bracken v. Yates Petroleum Corp.*, 1988-NMSC-072, ¶ 12, 107 N.M. 463, 760 P.2d 155 (holding on public policy grounds that the filing of a workers' compensation claim in an improper venue tolls the statute of limitations); *Ortega v. Shube*, 1979-NMCA-130, ¶ 9, 93 N.M. 584, 603 P.2d 323 (holding that Section 37-1-17 prohibits Section 37-1-14 from applying in workers' compensation and occupational disablement cases because both sets of laws contain specific statutes of limitations and noting that "[t]he court is powerless to change the plain meaning of the statutes"), *overruled on other grounds by Bracken*, 1988-NMSC-072, ¶ 12; *Perry v. Staver*, 1970-NMCA-096, ¶¶ 8, 13-14, 81 N.M. 766, 473 P.2d 380 (holding that under a former compilation, Section 37-1-17 applied to prevent application of Section 37-1-14 to a wrongful-death suit limited by the Wrongful Death Act), *overruled on other grounds by Estate of Brice v. Toyota Motor Corp.*, 2016-NMSC-018, ¶¶ 17, 42, 373 P.3d 977 (holding that the doctrine of fraudulent concealment may toll the three-year statute of limitations for wrongful death actions).

**{14}** Likewise, New Mexico courts have consistently held that Section 37-1-17 prohibits application of the tolling provisions in Section 37-1-10 on the same basis. *See* Section 37-1-10 (tolling the limitations period for minors and incapacitated persons "so that they shall have one year from and after the termination of such incapacity within which to commence said actions"); *see Natseway v. Jojola*, 1952-NMSC-104, ¶¶ 16-17, 56 N.M. 793, 251 P.2d 274 (construing the former compilation and holding that Section 37-1-17 prevented application of Section 37-1-10 to a wrongful death suit and noting

that "the courts cannot provide a saving clause or create an exception where the statute contains none"), *superseded by statute on other grounds as stated in Estate of Brice*, 2016-NMSC-018, ¶ 22; *Lent v. Emp. Sec. Comm'n*, 1982-NMCA-147, ¶ 32, 99 N.M. 407, 658 P.2d 1134 (holding that under Section 37-1-17, Section 37-1-10 does not apply to a workers' compensation claim); *Noriega*, 1974-NMCA-040, ¶ 6 (construing the former compilation of Section 37-1-10 and holding that under Section 23-1-17 (now Section 37-1-17), Section 32-1-10 (now Section 37-1-10) does not apply to a negligence action against a municipality). Autovest has not directed us to any authority demonstrating a contrary application of Section 37-1-17, and we found none. In light of the longstanding, consistent application of Section 37-1-17 by the appellate courts of New Mexico, we are bound to conclude that Section 37-1-17 renders Section 37-1-16 inapplicable to an action governed by Section 55-2-725.

**{15}**    The two UCC provisions that Autovest relies upon do not alter our analysis. To the extent that NMSA 1978, Section 55-1-103(b) (2005) (stating that "[u]nless displaced by the particular provisions of the [UCC], the principles of law and equity . . . supplement its provisions"), and Section 55-2-725(4) (explaining that "[t]his section does not alter the law on tolling of the statute of limitations"), can be read to incorporate the law on tolling set out in Chapter 37, Autovest has not explained why these UCC provisions would include Section 37-1-16 but not Section 37-1-17, and we are not aware of any legal authority or any reasonable justification for treating the two statutes differently.

**{16}**    Incorporating Section 37-1-16 but excluding Section 37-1-17 would be arbitrary, and it would require us to ignore the history of the statutory provisions at issue. When the Legislature enacted Section 55-2-725 as part of the UCC in 1961, Sections 37-1-16 and -17 had been in effect for over eighty years, having been enacted by our territorial legislature in 1880. "The Legislature is presumed to know existing statutory law and to take that law into consideration when enacting new law." *Gutierrez v. W. Las Vegas Sch. Dist.*, 2002-NMCA-068, ¶ 15, 132 N.M. 372, 48 P.3d 761. In this case, we presume that the Legislature knew that Section 37-1-17 would preclude the application of Section 37-1-16 to an Article 2 UCC claim, particularly given that our Supreme Court had construed Section 37-1-17's effect before the UCC was adopted. *See, e.g.*, *Natseway*, 1952-NMSC-104, ¶¶ 16-17. Given the statutory landscape, if the Legislature intended for the revival principles articulated in Section 37-1-16 to apply to Article 2 UCC claims, it could have said so expressly, as it did when it enacted Section 55-2-725(3), a savings provision within Article 2 that is similar to Section 37-1-14. *Cf. Bd. of Cnty. Comm'rs v. Bd. of Cnty. Comm'rs*, 2020-NMCA-017, ¶ 13, 460 P.3d 36 ("The Legislature knows how to include language in a statute if it so desires." (internal quotation marks and citation omitted)).

**{17}**    Finally, while Autovest argues that courts in other states have consistently held that a partial payment will toll or renew the statute of limitations for an Article 2 claim, we find such out-of-state authority distinguishable. The primary case Autovest points to, *Hamilton v. Pearce*, 547 P.2d 866, 869 (Wash. Ct. App. 1976), considered a partial payment statute similar to Section 37-1-16, but there is no indication that the State of

Washington has a statute similar to New Mexico's Section 37-1-17. Consequently, *Hamilton* does not speak to the dispositive issue in this case.

**{18}**     The remaining cases cited by Autovest addressed partial payment rules grounded in the common law rather than a statutory partial payment provision. *See Zelby Holdings, Inc. v. Videogenix, Inc.*, 82 N.E.3d 1067, 1069 (Mass. App. Ct. 2017) (holding that the primary issue on appeal was whether the common law partial payment rule applies to actions subject to the six-year statute of limitations in Article 3 (negotiable instruments) of Massachusetts's UCC); *Greer Limestone Co. v. Nestor*, 332 S.E.2d 589, 595-96 (W. Va. 1985) (applying the common law partial payment doctrine to an Article 2 UCC claim); *see also Hamilton*, 547 P.2d at 870 ("It should first be noted what the partial payment statute is. It is substantially a [codification] of the common-law rule. Most, if not all states, have a similar rule of law, if not by statute then as a part of their common law." (citation omitted)). Although New Mexico's territorial Legislature adopted the common law as the rule of practice and decision in 1876, *Beals v. Ares*, 1919-NMSC-067, ¶ 26, 25 N.M. 459, 185 P. 780, our courts have never addressed the partial payment doctrine as a matter of common law. It remains an open question whether New Mexico would recognize or apply the common law partial payment doctrine, particularly in light of the Legislature's codification of the rule in Section 37-1-16 in 1957.[5] *See Sims v. Sims*, 1996-NMSC-078, ¶ 23, 122 N.M. 618, 930 P.2d 153 (discussing the effect of the common law upon a statutory enactment and vice versa). However, that question is not before us today and we limit our review to the question of statutory interpretation presented on appeal.

**{19}**     We conclude that Section 37-1-17 prohibits the application of Section 37-1-16 in these cases. Accordingly, we hold that the partial payments did not revive the statute of limitations, that the four-year limitations periods set by Section 55-2-725 expired before Autovest filed its lawsuits, and Autovest's claims against Defendants are therefore time-barred.

## II.     Attorney Fees

**{20}**     Autovest separately appealed from the district court's attorney fee decisions in *Autovest I*, arguing that the award to the Agostos must be reversed because (1) Section 39-2-2 does not apply and thus there was no basis to award attorney fees to the Agostos and, alternatively, (2) the district court incorrectly calculated the amount of the award. Autovest also challenges the district court's denial of Autovest's motion for attorney fees. "We review the court's award of attorney fees for abuse of discretion, but when the issue involves misapplication of law to facts, we review the application of the

---

[5]As originally enacted in 1880, Section 37-1-16 did not recognize revival by partial payment. *See* 1880 N.M. Laws, ch. 5, § 13 ("Causes of action founded upon contract shall be revived by an admission that the debt is unpaid, as well as by a new promise to pay the same; but such admission or new promise must be in writing, signed by the party to be charged therewith."). The Legislature added the partial payment provision in 1957, two years after our Supreme Court's holding in *Gentry v. Gentry*, 1955-NMSC-055, ¶¶ 14-15, 59 N.M. 395, 285 P.2d 503 (noting that a partial payment was not a written admission within the meaning of Section 37-1-16 as then in effect).

law to the facts de novo." *J.R. Hale Contracting Co. v. Union Pac. R.R.*, 2008-NMCA-037, ¶ 93, 143 N.M. 574, 179 P.3d 579.

## A.      Attorney Fees Awarded to the Agostos

{21}    Autovest first contends that Section 39-2-2 does not allow for fee shifting in favor of the Agostos. We disagree.

{22}    Section 39-2-2 provides that "[i]n any civil action involving liability for a deficiency pursuant to [NMSA 1978,] Section 55-9-504 [(2001)] or [NMSA 1978,] Section 58-19-7 [(2013)], the debtor, if prevailing, may in the discretion of the court be allowed a reasonable attorney fee set by the court and taxed and collected as costs." We note initially that the Legislature's reference to Section 55-9-504 is apparently out of date; that section was recompiled as NMSA 1978, Sections 55-9-608 and -610 in 2001, but Section 39-2-2 has not been amended since its enactment in 1981. In their current form, Sections 55-9-608 and -610 are part of a statutory scheme governing defaults on secured transactions under Article 9 of the UCC.

{23}    The plain language and purpose of Section 39-2-2 and the statutes it refers to—Sections 55-9-608 and -610, and Section 58-19-7—indicate that the Legislature intended for Section 39-2-2 to allow an award of attorney fees in deficiency actions arising from defaults on automobile purchase contracts. Section 55-9-610 allows the secured party to sell the collateral in the event of a default, and Section 55-9-608(a)(4) states that an obligor remains liable for any deficiency following collection or enforcement. Similarly, Section 58-19-7(M), which is part of the Motor Vehicle Sales Finance Act, NMSA 1978 §§ 58-19-1 to -14 (1959, as amended through 2019), provides that "[i]n the event that the seller or the holder of the retail installment contract repossesses a motor vehicle, the buyer shall be responsible and liable for any deficiency in accordance with Section 55-9-608[.]" It is evident that a deficiency arising from the repossession and sale of an automobile is "pursuant to" the statutes referenced in Section 39-2-2. *See Pursuant to, Black's Law Dictionary* (11th ed. 2019) (defining "pursuant to" as (1) "[i]n compliance with; in accordance with; (2) "[a]s authorized by; under"; and (3) "[i]n carrying out"). And although Autovest makes much of our holding in *First Nat'l Bank*, it makes no practical difference that the deficiency action is governed by the statute of limitations in Article 2. *See* 1994-NMSC-127, ¶ 9 (noting that an automobile installment purchase contract is a "hybrid involving both sales and security aspects"). Accordingly, the district court did not err by concluding that Section 39-2-2 permitted it to award attorney fees in *Autovest I*.

{24}    Turning to Autovest's challenges to the amount of the award, Autovest argues that the district court abused its discretion by arbitrarily reducing the gross amount of the Agostos' requested attorney fees by two-thirds and by failing to segregate recoverable fees from non-recoverable fees. "While an award of attorney fees is discretionary, the exercise of that discretion must be reasonable when measured against objective standards and criteria." *Rio Grande Sun v. Jemez Mountains Pub. Sch. Dist.*, 2012-NMCA-091, ¶ 13, 287 P.3d 318 (internal quotation marks and citation

omitted). "The lodestar provides an objective basis for valuing the attorney's services," *In re N.M. Indirect Purchasers Microsoft Corp.*, 2007-NMCA-007, ¶ 34, 140 N.M. 879, 149 P.3d 976, and "[i]n statutory fee-shifting cases . . . the lodestar method for determining attorney fees is generally used because it provides adequate fees to attorneys who undertake litigation that is socially beneficial, irrespective of the pecuniary value to the claimant." *Rio Grande Sun*, 2012-NMCA-091, ¶ 20 (alteration, internal quotation marks, and citation omitted).

{25}    "A lodestar is determined by multiplying counsel's total hours reasonably spent on the case by a reasonable hourly rate." *Id.* (internal quotation marks and citation omitted). "This value serves as a starting point for the calculation"; the fee awarded must also be reasonable. *Atherton v. Gopin*, 2012-NMCA-023, ¶ 7, 272 P.3d 700. New Mexico courts traditionally use the factors set forth in Rule 16-105 NMRA of the Rules of Professional Conduct to examine the reasonableness of attorney fees. *In re N.M. Indirect Purchasers Microsoft Corp.*, 2007-NMCA-007, ¶¶ 76-77. These factors include:

> (1)    the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2)    the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3)    the fee customarily charged in the locality for similar legal services;
>
> (4)    the amount involved and the results obtained;
>
> (5)    the time limitations imposed by the client or by the circumstances;
>
> (6)    the nature and length of the professional relationship with the client;
>
> (7)    the experience, reputation, and ability of the lawyer performing the services; and
>
> (8)    whether the fee is fixed or contingent.

*Id.* ¶ 77 (citing factors set forth in Rule 16-105(A)). "A court need not consider all factors or give all the factors equal weight." *Behrens v. Gateway Ct., LLC*, 2013-NMCA-097, ¶ 33, 311 P.3d 822.

{26}    In this case, the amount sought by the Agostos was based on a lodestar calculation; counsel provided the district court with affidavits and billing records detailing their hourly rates and the time spent on the case. *See id.* The district court found that counsels' hourly rates were reasonable, as was the time expended, but reduced the fee request by 66.6667%, saying:

[The Agostos] have prevailed on the ultimate issue of law, and are entitled to reasonable attorneys' fees. However, the [c]ourt has elected to award net attorneys' fees to Counsel for [the Agostos], recognizing that [Autovest] has prevailed on numerous issues including but not limited to a Motion to Compel. A reduction of 2/3rds of the requested fees is appropriate.

The court stated that it "considered and applied the factors going into an award of attorney fees expressed in [Rule] 1-054(D) [NMRA] and [*Gavin Maloof & Co. v. Sw. Distrib. Co.*, 1987-NMSC-103, ¶ 9, 106 N.M. 413, 744 P.2d 541]."

**{27}** The district court strayed from objective standards when it arbitrarily reduced the fees award by two thirds. *See Rio Grande Sun*, 2012-NMCA-091, ¶ 20. This case is similar to *Behrens*, where the district court acknowledged the plaintiff's proposed lodestar calculation but reduced the fee award in part "because [the d]efendant successfully defended against [the p]laintiff's other claims for punitive damages, emotional distress damages, and civil penalty damages." 2013-NMCA-097, ¶ 37. Though we said the district court may properly reduce the attorney fee calculation to the extent it includes fees for claims on which the plaintiff had not prevailed, the court must still "assess the time involved in each claim or defense." *Id.*; *see also Dean v. Brizuela*, 2010-NMCA-076, ¶ 17, 148 N.M. 548, 238 P.3d 917 ("Our Supreme Court has continued to direct that recoverable fees be segregated from non-recoverable fees to ensure that only those fees for which there is authority to award attorney fees are in fact awarded."). Instead of undertaking that evaluation, however, "the district court awarded [the p]laintiff an arbitrary fee of $10,000 that was then reduced by $5,000 without any analysis of the actual factual circumstances and time involved to support these calculations." *Behrens*, 2013-NMCA-097, ¶ 37. We concluded that the district court had abused its discretion by failing to "utilize the lodestar method or any objective analysis of the facts in order to determine [the p]laintiff's reasonable attorney fees." *Id.* ¶ 38.

**{28}** The law requires the same conclusion here. The district court expressly declined to use the lodestar method and the record contains no indication that the district court considered any objective criteria other than the reasonableness of counsels' hourly rates. The district court reduced the Agostos' fee award because Autovest had prevailed on a number of matters, including the Agostos' counterclaims, but the reduction was not grounded in an analysis of the time involved or an effort to segregate recoverable from non-recoverable fees. *See id.* ¶ 37. And while the district court apparently relied on *Gavin Maloof Co.* for the proposition that it may use its own knowledge and expertise in determining the value of an attorney's legal services, *Gavin Maloof Co.* does not stand for the proposition that a district court may disregard objective standards and criteria. *See* 1987-NMSC-103, ¶ 9 ("Based upon its knowledge of the case and the pleadings filed, and without submission of time records and testimony, the trial court could properly have determined that [the plaintiff's] counsel was entitled to $832 as a reasonable fee."). On the contrary, we recognized that *Gavin Maloof Co.* is but one part of the reasonableness analysis, explaining that "[h]istorically, New Mexico courts have *also* used the factors now found in Rule 16-105 . . . to examine

the reasonableness of attorney fees." *In re N.M. Indirect Purchasers Microsoft Corp.*, 2007-NMCA-007, ¶ 76 (emphasis added) (citing *Gavin Maloof Co.* as one of the considerations relevant to the reasonableness of an attorney fee award).

**{29}** Because the district court "failed to utilize the lodestar method or any objective basis for determining a reasonable award of attorney fees," we hold that the court abused its discretion. *Rio Grande Sun*, 2012-NMCA-091, ¶ 21. We reverse the district court's award of attorney fees and remand for recalculation. The district court should use the lodestar method as a starting point for its calculation and enter findings of fact and conclusions of law that take into account the factors set forth in Rule 16-105. Further, because fees are authorized under Section 39-2-2 only for work related to the defense of the deficiency action, the court should take care "to ensure that only those fees for which there is authority to award attorney fees are in fact awarded." *Dean*, 2010-NMCA-076, ¶ 17.

## B.     Attorney Fees Requested by Autovest

**{30}** Autovest also argues the district court abused its discretion in its handling of Autovest's motion for attorney fees. About two weeks after the district court entered its order awarding fees to the Agostos, Autovest filed a motion for attorney fees on the basis that it had defeated Debbie's UPA counterclaim. Under the UPA, a party who successfully defends against a UPA claim is entitled to an award of attorney fees if the district court "finds that the party complaining of such trade practice brought an action that was *groundless*." Section 57-12-10(C) (emphasis added). The district court ultimately declined to award Autovest a monetary judgment, writing that the two-thirds reduction of the Agostos' award reflected an award of attorney fees to Autovest:

> 2.     For the reasons articulated on the record at the [hearing on the Agostos' request for attorney fees], the [c]ourt will not enter a monetary judgment in favor of Autovest, LLC based on its fee request;
>
> 3.     As explained at the [hearing on the Agostos' motions], an award of attorneys' fees to Autovest, LLC is reflected in the [c]ourt's reduction of the attorneys' fees sought by Debra Agosto and Debbie Agosto by two-thirds (66.6667%), in the Order & Judgment for Attorneys' Fees, entered June 1, 2018[.][6]

---

[6]At the hearing on the Agostos' motion for attorney fees, the district court stated:

> [Autovest] may assume that there is an award of attorneys' fees to you in this regard: The attorney fee affidavit I have cut by 66 percent. That gives you some sense of the fact that I think that you prevailed, and I recognize that you prevailed on the motion to strike and three of the four motions. The only one that you didn't prevail on was the one that was most dispositive, which was the statute of limitations. . . . And I have recognized the power and winning position that Autovest took on many issues, including the motion to compel, including the motion to strike and three of the four—all of the Unfair Practices Act. . . . That's why [D]efendants' affidavit for attorneys' fees has been cut by 66 percent.

**{31}** Autovest argues that the district court could not have accounted for Autovest's fees when it reduced the Agostos' fees by two-thirds because Autovest had not yet filed its motion, and there was no evidence in the record as to the amount Autovest incurred in connection with defending against the counterclaim. We agree and reverse. *See Behrens*, 2013-NMCA-097, ¶ 34.

**{32}** On remand, the starting point for the district court's analysis must be to determine whether Debbie's UPA counterclaim was "groundless." *See Robey v. Parnell*, 2017-NMCA-038, ¶ 44, 392 P.3d 642 ("[W]e do not read the statute to authorize an award of attorney fees to the [counter]defendants merely because they successfully prevailed against the claims asserted by the [counter]plaintiff." (alterations, internal quotation marks, and citation omitted)). "A claim is considered groundless, which we have held is synonymous with frivolous, when there is no arguable basis in law or fact to support the cause of action and the claim is not supported by a good-faith argument for the extension, modification, or reversal of existing law." *Id.* (internal quotation marks and citations omitted); *Jones v. Beavers*, 1993-NMCA-100, ¶ 23, 116 N.M. 634, 866 P.2d 362 ("The party must also establish that, at the time such claim was filed, the claim was initiated in bad faith or there was no credible evidence to support it."). While Autovest urges us to conclude that the district court necessarily found that the UPA claim was groundless when it decided to reduce the Agostos' fee award, the district court never made an explicit finding on this point as required by Section 57-12-10(C). *See also Robey*, 2017-NMCA-038, ¶ 46 (stating that the district court's "conclusions of law must be supported by findings of ultimate fact" (alteration, internal quotation marks, and citation omitted)).

**{33}** If the district court finds that Debbie's UPA counterclaim was groundless, it must then determine Autovest's reasonable attorney fees. *See Behrens*, 2013-NMCA-097, ¶¶ 34, 37. As with the calculation of the Agostos' attorney fee award, the district court should use the lodestar method as a starting point for its calculation and enter findings of fact and conclusions of law that account for the factors set forth in Rule 16-105. Further, because the UPA claim is the only claim for which Autovest could be awarded attorney fees, the district court must take care to ensure that the fee award relates solely to the UPA claim. *See Jaramillo v. Gonzales*, 2002-NMCA-072, ¶ 41, 132 N.M. 459, 50 P.3d 554 ("Because the UPA claim was the only claim for which [the p]laintiffs could be awarded attorney fees, the trial court was obligated to separate the claims and determine the amount of time spent on each."); *see also Dean*, 2010-NMCA-076, ¶ 16 ("[I]t has long been the rule in New Mexico that a party is only entitled to those fees resulting from the cause of action for which there is authority to award attorney fees.").

**{34}** Finally, we reject Autovest's contention that the Agostos have waived any challenge to the reasonableness of Autovest's requested attorney fees. *See Dean*, 2010-NMCA-076, ¶ 18 (stating that once the plaintiff made its claim for attorney fees, "it was left to the discretion of the trial court to make the award based upon [the p]laintiff['s] proof of the reasonableness of the fees. The defendant[s] did not have to object to the time or show that it was separate. It was for the trial court to review the claim made by

[the p]laintiff[] and in its discretion determine what fees to award" (alteration, internal quotation marks, and citation omitted)).

**CONCLUSION**

**{35}**   In *Autovest I*, we affirm the district court's dismissal of Autovest's complaint but reverse the court's award of attorney fees to the Agostos and remand for recalculation. We also reverse the district court's order on Autovest's motion for attorney fees and remand for reconsideration. The court must consider the Agostos' claim separately from Autovest's claim.

**{36}**   In *Autovest II*, we reverse the district court's judgment in favor of Autovest and remand with instructions to enter judgment in favor of Estrada.

**{37}**   **IT IS SO ORDERED.**

**MEGAN P. DUFFY, Judge**

**WE CONCUR:**

**ZACHARY A. IVES, Judge**

**SHAMMARA H. HENDERSON, Judge**