# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Opinion Number: 2025-NMSC-001**

**Filing Date: August 15, 2024**

**No. S-1-SC-38834**

**AUTOVEST, L.L.C.,**

      Plaintiff-Petitioner,

v.

**DEBRA M. AGOSTO and
DEBBIE M. AGOSTO,**

      Defendants-Respondents,

and

**AUTOVEST, L.L.C.,**

      Plaintiff-Petitioner,

v.

**MARIA ESTRADA,**

      Defendant-Respondent,

and

**FRANK RIVERA, JR.,**

      Defendant,

and

**AUTOVEST, L.L.C.,**

      Plaintiff-Petitioner,

v.

**DEBRA M. AGOSTO and
DEBBIE M. AGOSTO,**

      Defendants-Respondents.

**ORIGINAL PROCEEDING ON CERTIORARI
Mary W. Rosner, District Judge**

Jenkins & Young, P.C.
Jody Jenkins
Lubbock, TX

Simmonds & Narita LLP
R. Travis Campbell
San Francisco, CA

for Petitioner

Hanratty Law Firm
Kevin J. Hanratty
Artesia, NM

Kenneth L. Beal, P.C.
Kenneth L. Beal
Las Cruces, NM

for Respondents

Rodey, Dickason, Sloan, Akin & Robb, P.A.
Edward R. Ricco
Albuquerque, NM

for Amicus Curiae National Creditors Bar Association

## OPINION

**THOMSON, Chief Justice.**

**{1}**    In these consolidated appeals, we affirm the Court of Appeals that Chapter 37's partial payment rule does not revive the four-year statute of limitations for breach of contract actions under Section 2 of New Mexico's Uniform Commercial Code (UCC). *See Autovest, L.L.C. v. Agosto*, 2021-NMCA-053, ¶ 1, 497 P.3d 642; NMSA 1978, §55-2-725(1) (1961). We also conclude that Autovest abandoned its argument that New Mexico should adopt a common law partial payment rule because it failed to raise the issue in its direct appeal from the district court to the Court of Appeals.

## I.    INTRODUCTION

**{2}**    The financial journeys of Debra and Debbie Agosto, and Maria Estrada (collectively, Respondents) share a beginning familiar to many New Mexicans, the purchase of a car.[1] A buyer trades in their old car and signs a six-year finance agreement borrowing more than $23,000 for a three-year-old sedan worth $11,790. The total amount financed includes the accrued annual interest (17%) and an array of finance charges and associated fees. One of those fees is a life insurance policy funded by and rolled into the loan, providing the bank, as the lender and primary beneficiary, the entire value of the contract.

**{3}**    Over two years, some payments are timely, and some are not. The bank invokes the agreement's acceleration clause, requiring the buyer to immediately repay the entire balance or risk losing the car; the buyer chooses to voluntarily return the vehicle. Within two months of repossession, the sedan is sold at auction for $3,800, representing a 67.8% depreciation in two and a half years. The auction proceeds are applied to the balance of the debt, but a deficiency of almost $9,000 remains. The bank sells and assigns its interest to a third-party debt collector like Autovest. The collection calls continue, and the buyer approves a draw from their account in a good faith effort to pay down the deficiency.

**{4}**    More than five years after default and eight years after purchasing the sedan, the debt's new owner brings an action to recover the remaining deficiency. Respondents argue that the UCC bars the claim because the UCC specifies a four-year statute of limitations for transactions involving the sale of goods. Section 55-2-725(1). A statute of limitations establishes a maximum time frame for a party to bring a suit. It prevents the disposition of aging claims so that a case is brought before evidence is lost and memories fade. Because more than four years have passed, Respondents contend that the Court of Appeals correctly dismissed the creditor's lawsuit.

**{5}**    Autovest maintains that the suit was timely because Defendant's payment revived the statute of limitations under New Mexico's partial payment rule, which renews the four-year limitation period whenever a debtor remits any amount toward an outstanding balance. *See* NMSA 1978, § 37-1-16 (1957) ("Causes of action founded upon contract shall be revived by the making of any partial or installment payment."). The two district courts reached different conclusions on revival by partial payment, albeit under theories not at issue in this appeal. *See Agosto*, 2021-NMCA-053, ¶ 1.

**{6}**    The Court of Appeals consolidated the cases and rejected Autovest's argument that the partial payment rule applied to this transaction, relying on a plain-language interpretation of Section 37-1-17. *Agosto*, 2021-NMCA-053, ¶ 1 n.1, ¶¶ 12-13; NMSA 1978, Section 37-1-17 (1880). Section 37-1-17 functions as an exclusion provision that

---

[1]The Court of Appeals, *id.* ¶ 1 n.1, consolidated three appeals from two district court cases with common issues: A-1-CA-37459 and A-1-CA-37969 (appealing from *Autovest, L.L.C. v. Debra M. Agosto & Debbie M. Agosto*, D-307-CV-2014-01148) and A-1-CA-37483 (appealing from *Autovest, L.L.C. v. Maria Estrada & Frank Rivera Jr.*, D-307-CV-2013-00164). Because the facts of both cases share many commonalities, we review only the facts of the Agostos.

prohibits the application of all of Chapter 37's terms, including the partial payment rule, when another statute establishes a different limitation period. Section 37-1-17 ("None of the provisions of this chapter shall apply to any action or suit which, by any particular statute of this state, is limited to be commenced within a *different time*." (emphasis added)). The Court of Appeals noted that Chapter 37 establishes a default statute of limitations period of six years for contracts in writing. *Agosto*, 2021-NMCA-053, ¶ 12; NMSA 1978, § 37-1-3(A) (2015). Because the UCC mandates a *different time* of four years, the Court held that the exclusion provision "render[ed] the [partial payment rule] inapplicable." *Agosto*, 2021-NMCA-053, ¶ 12; Section 37-1-17.

{7}     Fifteen years after the buyer purchased the sedan, Autovest appealed to this Court, arguing that Section 55-2-725(4) of the UCC (the tolling provision) overrides the mandatory prohibition of the exclusion provision.[2] *See id.*; NMSA 1978, Section 55-2-725(4) (1961). ("This section *does not alter* the law on tolling of the statute of limitations." (emphasis added)). We disagree. The exclusion provision unambiguously precludes the application of the partial payment statute. Further, the UCC's declaration that its terms *do not alter* existing tolling law does not operate to supersede the Legislature's mandatory exclusion of Chapter 37. It does the opposite; it restricts the reach of the UCC's provisions rather than extending their command.

{8}     Accepting Autovest's argument would restart the statute of limitations whenever a consumer makes a partial payment. Reviving the limitation period would allow a debt collector to file a lawsuit regardless of how many years have passed since default, even if the lawsuit would normally be time-barred. *Joslin v. Gregory*, 2003-NMCA-133, ¶ 14, 134 N.M. 527, 80 P.3d 464 ("A partial payment will *renew a barred debt* when such payment is made under circumstances that warrant a clear inference that the debtor acknowledges and is willing to pay a further indebtedness." (text only)[3] (emphasis added) (quoting II Calvin W. Corman, *Limitation of Actions* § 9.12.3 at 93 (1991))). This would sanction the eternal revival of claims such that the specter of zombie debt rising from the grave would forever haunt consumers. There would be no end to the underinformed debtor's financial anguish.

{9}     This is not to suggest that Respondents should not answer for their obligations under the financial agreement. They should. But where the Legislature's language is unambiguous and mandatory, as it is in the exclusion provision, we are compelled to enforce its terms. We hold that Section 37-1-16's partial payment rule does not override or otherwise supersede the mandatory terms of the exclusion provision. We, therefore,

---

2Autovest also asks us to adopt a common-law partial payment rule to supplement Chapter 37's statutory provision. However, because Autovest failed to adequately raise the issue at the Court of Appeals, we are precluded from reaching the question on certiorari review. *See State v. Harbison*, 2007-NMSC-016, ¶ 25, 141 N.M. 392, 156 P.3d 30 (failing to raise an issue in his direct appeal from the district court to the Court of Appeals, the defendant abandoned it and cannot resurrect it for the first time on a writ of certiorari to this Court); *cf*. Rule 12-502(C)(2)(e) NMRA (requiring parties to demonstrate where they presented questions to the Court of Appeals).

3The "text only" parenthetical indicates omission of nonessential punctuation marksincluding internal quotation marks, ellipses, and bracketsthat are present in the text of the quoted source, leaving the quoted text otherwise unchanged.

affirm the Court of Appeals and remand each case to its respective district court to amend the judgment consistent with our holdings.

## II. LEGAL ANALYSIS

**{10}** To determine whether the partial payment provision applies to a written contract for the sale of goods, we must consider the interplay between two statutes: Chapter 37's exclusion provision and the UCC's tolling provision. Our Legislature drafted the exclusion provision to prohibit courts from applying Chapter 37's terms whenever a statute outside of the Chapter establishes a different limitation period. *See* § 37-1-17. The Court of Appeals held that "by its plain terms, [the exclusion provision] renders [the partial payment provision] inapplicable." *Agosto*, 2021-NMCA-053, ¶ 12. Autovest acknowledges that the plain language of the exclusion provision precludes the application of the partial payment rule but argues that the tolling provision makes their collection efforts timely. Under Autovest's interpretation, the tolling provision's statement that the UCC "*does not alter* the law on tolling of the statute of limitations" overrides the exclusion provision and *preserves* the partial payment rule such that it applies to the sale of goods.

**{11}** We settle this question of law through statutory interpretation, which we review de novo. *Cooper v. Chevron U.S.A., Inc.*, 2002-NMSC-020, ¶ 16, 132 N.M. 382, 49 P.3d 61 ("The meaning of language used in a statute is a question of law that we review de novo."). "In construing a statute, we must ascertain and give effect to the intent of the Legislature. To accomplish this, we apply the plain meaning of the statute unless the language is doubtful, ambiguous, or an adherence to the literal use of the words would lead to injustice, absurdity or contradiction." *Nguyen v. Bui*, 2023-NMSC-020, ¶ 15, 536 P.3d 482 (internal quotation marks and citation omitted). Because we are analyzing the relationship between two statutes, we read the statutes together, presuming "the legislature did not intend to enact a law inconsistent with existing law. . . . Thus, two statutes covering the same subject matter should be harmonized and construed together when possible in a way that facilitates their operation and the achievement of their goals." *State ex rel. Quintana v. Schnedar*, 1993-NMSC-033, ¶ 4, 115 N.M. 573, 855 P.2d 562.

### A. The Exclusion Provision Precludes the Application of the Partial Payment Provision

**{12}** Our analysis begins with a straightforward application of the exclusion provision's unambiguous terms. *Noriega v. City of Albuquerque*, 1974-NMCA-040, ¶ 8, 86 N.M. 294, 523 P.2d 29 (holding that the exclusion provision "is unambiguous; there is no room for construction"). Chapter 37's exclusion provision states, "None of the [preceding] provisions of this chapter shall apply to any action or suit which, by *any particular statute of this state*, is limited to be commenced within a *different time*."[4]

---

4While Section 37-1-17 remains unamended since its 1880 enactment, the unofficially inserted term "preceding" first appeared in this statute in the official annual NMSA 1978 publication for 1977 and persisted annually therein through the 2017 annual publication, after which the Compilation Commission removed this unofficial insertion at the request of the Legislative Council Service. The statute quoted here

Section 37-1-17 (emphasis added). Respondents in both cases entered into a written agreement for the purchase of a used car. Section 37-1-3(A) establishes the default six-year statute of limitations for actions arising from a contract in writing. However, when the contract is for the sale of goods,[5] Section 55-2-725(1) is a *particular statute of this state* that provides *a different time* for bringing a cause of action, four years. *Id.* (requiring that breach of contract actions for the sale of goods "be commenced within four years after the cause of action has accrued").

**{13}** Because four years is a *different time* than six, the exclusion provision is triggered, precluding the application of all of Chapter 37's provisions. *See* § 37-1-17; *compare* § 37-1-3(A) (providing a six-year statute of limitation for "contract[s] in writing."), *with* § 55-2-725(1) (establishing a four-year limitation for breach of contract actions). This *includes* the partial payment provision that Autovest relies upon. *See* § 37-1-16. The Legislature's language aptly summarizes the application of the exclusion provision to the facts of this case: "None of the [preceding] provisions of this chapter [including Section 37-1-16's partial payment provision] shall apply to [Autovest's] suit which, by [Section 55-2-725(1) of the UCC], is limited to be commenced within [the] different time [of four and not six years]." Section 37-1-17.

**B.    The Legislature Did Not Intend for the UCC's Tolling Provision to Override the Mandatory Terms of the Exclusion Provision**

**{14}** Autovest contends that in adopting the model acts of the Uniform Commercial Code the Legislature intended for the tolling provision, § 55-2-725(4), to override the exclusion provision. The thrust of Autovest's position is that the tolling provision "*preserves* the law on tolling," which includes the partial payment provision (emphasis added). However, Autovest's sole proof of legislative intent lies not in the Legislature's actual language but in a statute of the Legislature's own design. Autovest's chosen verb, *preserves*, does not exist in the tolling provision. *State v. Trujillo*, 2009-NMSC-012, ¶ 11, 146 N.M. 14, 206 P.3d 125 ("We will not read into a statute any words that are not there, particularly when the statute is complete and makes sense as written.").

**{15}** "We begin the search for legislative intent by looking first to the words *chosen* by the Legislature and the plain meaning of the Legislature's language." *State v. Gutierrez*, 2023-NMSC-002, ¶ 26, 523 P.3d 560, 566 (text only) (emphasis added) (citation omitted). The UCC's tolling provision states, "This section *does not alter* the law on tolling of the statute of limitations." Section 55-2-725(4) (emphasis added). Autovest asks us to replace *does not alter* with *preserves*, an affirmative verb. But the Legislature *chose* a negative verb: "not alter." As this Court has noted, "'Statutes must be read according to their *grammatical sense.*'" *State v. Montano*, 2020-NMSC-009, ¶ 36, 468 P.3d 838 (quoting *Garcia v. Schneider, Inc.*, 1986-NMCA-127, ¶ 9, 105 N.M. 234, 731 P.2d 377 (emphasis added)). Polarity, the grammatical lexicon associated with affirmation and negation, matters to this opinion. *Preserves* is a transitive verb, which

___

includes brackets on "preceding" to mark as unofficial the persistence of the term for decades before the bank invoked the acceleration provision and until two years before Autovest's 2019 filing in the Court of Appeals.

[5]There is no dispute that this case involves a sale of goods.

means the subject (the UCC) affirmatively acts on (preserves) a direct object (the law on tolling). "Alter" is also a transitive verb, so when you negate the verb in this context, you are restricting the ability of the subject of the sentence (the UCC) to affirmatively act on (alter) the object (any law on tolling).

**{16}**　The difference between an affirmative (mandatory) injunction and a negative (prohibitory) injunction exemplifies this concept. The former "is an injunction which compels some *positive action* by the person or persons enjoined." *Amkco, Ltd., Co. v. Welborn*, 1999-NMCA-108, ¶ 14, 127 N.M. 587, 985 P.2d 757 (emphasis added), *rev'd in part on other grounds*, 2001-NMSC-012, ¶ 12, 130 N.M. 155, 21 P.3d 24. The latter "'*prohibits* a party from *taking action* and preserves the status quo.'" *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1060 (9th Cir. 2014) (emphasis added) (citation omitted).

**{17}**　Autovest's view of "preserves" is more synonymous with restores or protects, verbs that confer a power. But the Legislature explicitly stated that the UCC *does not alter* existing tolling law. In this context, the phrase "does not alter" restricts the reach of the UCC's provisions rather than extending the statute's command. *Alter* means the following:

> To make a change in; to modify; to vary in some degree; to change some of the elements or ingredients or details without substituting an entirely new thing or destroying the identity of the thing affected. To change partially. To change in one or more respects, but without destruction of existence or identity of the thing changed; to increase or diminish.

*See alter*, *Black's Law Dictionary* (6th ed. 1990); *Fleming v. Phelps-Dodge Corp.*, 1972-NMCA-060, ¶ 7, 83 N.M. 715, 496 P.2d 1111 (applying the definition of *alter* from *Black's Law Dictionary*). Thus, to declare that the UCC "does not alter" the law on tolling means that the tolling provision does not "change" or "modify," not even "partially," the status quo.

**{18}**　The official comments adopted by the New Mexico Legislature reinforce our reading, affirming that "Subsection (4) . . . does not purport to *alter or modify* in any respect the law on tolling of the statute of limitations as it *now prevails in the various jurisdictions*." Section 55-2-725(4) cmt. (emphasis added); *First State Bank at Gallup v. Clark*, 1977-NMSC-088, ¶ 5, 91 N.M. 117, 570 P.2d 1144 ("We recognize the Official Comments to the U.C.C. as persuasive, though they are not controlling authority."); *Gardner Zemke Co. v. Dunham Bush, Inc.*, 1993-NMSC-016, ¶ 18 n.2, 115 N.M. 260, 850 P.2d 319 ("'The[ official] comments are very useful in presenting something of the background and purposes of the sections, and of the way in which the details and policies build into a whole. In these aspects they greatly aid understanding and construction.'" (quoting Karl N. Llewellyn, *Why We Need the Uniform Commercial Code*, 10 U. Fla. L. Rev. 367, 375 (1957))). When we examine the tolling provision alongside the commentary, the Legislature's intent is clear: the UCC does not alter or modify the law on tolling as it exists in New Mexico, one of the various jurisdictions that has adopted the uniform acts. *See alter*, *Black's Law Dictionary* (6th ed. 1990).

**{19}** The language of the UCC's tolling provision and the official comments prompt two considerations in determining whether the partial payment rule applies. First, what is the law on tolling? And second, how does it prevail in New Mexico? The law on tolling includes common law actions such as equitable tolling. *Ocana v. Am. Furniture Co.*, 2004-NMSC-018, ¶ 15, 135 N.M. 539, 91 P.3d 58 ("Equitable tolling is a nonstatutory tolling theory which suspends a limitations period."). The law on tolling also includes tolling statutes enacted by the Legislature. *See* NMSA 1978, § 37-1-10 (1975) (specifying limitation times on tolling claims for minors and incapacitated persons). For purposes of this discussion, we assume the partial payment provision is part of the law on tolling.[6]

**{20}** We next assess how the partial payment provision "now prevails" under New Mexico law. *See* § 55-2-725(4) cmt. As discussed in Section II.A, the partial payment provision applies under New Mexico law as long as the mandatory exclusion provision is not triggered. The UCC's tolling provision merely maintains the equilibrium established in Chapter 37. So, when the exclusion provision does not apply, the partial payment rule would be available to revive the limitation period.[7] Alternatively, when the exclusion provision bars the application of the partial payment rule, the UCC guarantees that its terms leave the rule in its present state: barred. As one treatise put it, "The [UCC] does not alter non-[UCC] law relating to the tolling of statutes of limitation." 4B David Frisch, Lawrence's Anderson on the UCC § 2-725:136 (3d. ed. 2023). Autovest's interpretation violates the statute's explicit instruction because it forces the UCC's tolling law provision to do precisely what the Legislature forbids: to modify and alter the law on tolling as it now prevails under New Mexico law.[8]

**{21}** Autovest's interpretation also fails to account for the Legislature's use of *shall* in the exclusion provision. Section 37-1-17 ("None of the [] provisions . . . *shall* apply.") "The word shall is ordinarily the language of command. And when a law uses shall, the normal inference is that it is used in its usual sense—that being mandatory." *Yedidag v. Roswell Clinic Corp.*, 2015-NMSC-012, ¶ 53, 346 P.3d 1136 (text only) (quoting *Anderson v. Yungkau*, 329 U.S. 482, 485 (1947)). Our Legislature has recognized that

---

6Because we hold that the tolling provision does not operate as a statutory override, addressing whether the partial payment provision is a part of the law on tolling is unnecessary.

7*Hamilton v. Pearce*, the Washington Court of Appeals case inaptly relied upon by Autovest, is a prime exemplar of this outcome. 547 P.2d 866 (Wash. Ct. App. 1976). There, the appellate court ruled that a partial payment statute, similar in form to our own, applied to the sale of goods. *Id.* at 870; *see* Wash. Rev. Code Ann. § 4.16.270 (1877) & § 4.16.280 (1877). Autovest suggests this decision supports the proposition that our "Legislature intended for New Mexico's tolling laws to apply to Article 2 claims." But in Washington, there was no exclusion provision to bar the application of the partial payment statute. *See* Wash. Rev. Code Ann. §§ 4.16.010 to .350 (1974) (*Limitation of Actions*). Thus, the intermediate court concluded using the terms of the UCC's tolling provision that "the UCC statute of limitations . . . did not alter or modify in any respect the law on the tolling of statutes of limitation, including . . . the partial payment statute, as it prevails in this State." *Hamilton*, 547 P.2d at 870.

8Autovest repeatedly suggests our interpretation renders the tolling provision superfluous. We disagree. The tolling provision states that Section 2 of the UCC does not alter the *law on tolling*. As already discussed, in this section, the law on tolling includes statutory provisions and those common law tolling principles recognized by New Mexico courts. The tolling provision retains the status quo developed by our Legislature and courts. A statute is not superfluous solely because it does not operate to achieve a party's desired outcome in a particular instance.

*shall* "express[es] a duty, obligation, [or] requirement." NMSA 1978, § 12-2A-4(A) (1997). As the Supreme Court has noted, this obligation is "normally . . . impervious to judicial discretion." *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 27 (1998). Thus, "'Shall' will be given its mandatory meaning, unless there are indications in the statute that the mandatory reading is repugnant to the manifest intent of the Legislature." *Tomlinson v. State*, 1982-NMSC-074, ¶ 9, 98 N.M. 213, 647 P.2d 415.

**{22}** Autovest asks us to accept that the negative language of the UCC's tolling provision carries the force to override or supersede *any and all* mandatory provisions related to tolling law. However, the Legislature's chosen language and official comments provide no clear indication of an intent to supersede other statutes. *Marbob Energy Corp. v. N.M. Oil Conservation Comm'n*, 2009-NMSC-013, ¶ 22, 146 N.M. 24, 206 P.3d 135 ("It is widely accepted that when construing statutes, 'shall' indicates that the provision is mandatory, and we must assume that the Legislature intended the provision to be mandatory absent a[] clear indication to the contrary."). "[W]e presume the [L]egislature is aware of existing law when it enacts legislation," *Sunwest Bank of Albuquerque, N.M. v. Nelson*, 1998-NMSC-012, ¶ 15, 125 N.M. 170, 958 P.2d 740 (internal quotation marks and citation omitted). We also presume the Legislature would have "take[n] that law into consideration when enacting new law." *Gutierrez v. Las Vegas Sch. Dist.*, 2002-NMCA-068, ¶ 15, 132 N.M. 372, 48 P.3d 761. This is especially true here because this Court had already interpreted the exclusion provision prior to legislative adoption of the UCC. *See, e.g.*, *Natseway v. Jojola*, 1952-NMSC-104, ¶ 16, 56 N.M. 793, 251 P.2d 274. One would typically expect an explicit statutory statement, like a "notwithstanding" clause, to signal an intent for the statute to prevail over all others. *Morningstar Water Users Ass'n v. N.M. Pub. Util. Comm'n*, 1995-NMSC-062, ¶ 48, 120 N.M. 579, 904 P.2d 28 ("Generally, a 'notwithstanding' clause serves to prevent the matters following the clause from being frustrated by other statutory provisions."); *see, e.g.*, Public Employee Bargaining Act, NMSA 1978, § 10-7E-3 (2020) ("In the event of conflict with other laws, the provisions of the Public Employee Bargaining Act shall *supersede* other previously enacted legislation and rules . . . ." (emphasis added)).

**{23}** The absence of definitive language is even more noteworthy given the Legislature's use of "supersede" and "notwithstanding" provisions throughout the UCC. NMSA 1978, § 55-1-108 (2005) (stating that Article 1 of the UCC "supersedes the federal Electronic Signatures in Global and National Commerce Act"); NMSA 1978, § 55-3-102(c) (1992) (declaring that regulations of the federal reserve system supersede conflicting regulations in Article 3 of the UCC); NMSA 1978, § 55-2A-302 (1992) (noting that each provision of Article 2A applies "notwithstanding any statute or rule of law"). Here, the UCC's tolling provision states only what the UCC *cannot do*: alter the existing law on tolling. The provision does not confer the power to override or supersede other statutes.

**{24}** An interpretation restricting the authoritative reach of the tolling provision is also consistent with the official comments that the "article does not purport to alter or modify in any respect the law on tolling as it now prevails *in the various jurisdictions*." Section 55-2-725(4) cmt. (emphasis added). The Uniform Commercial Code as drafted by the

National Conference of Commissioners on Uniform State Laws and the American Law Institute (the Code) is a collection of proposed model laws designed for application across state and federal jurisdictions. Here, our Legislature adopted the tolling provision verbatim without amendment. *Compare* § 55-2-725(4) (1961) ("This section does not alter the law on tolling of the statute of limitations nor does it apply to causes of action which have accrued before this act [this chapter] becomes effective."), *with* Uniform Commercial Code § 2-725, at 263 (1952) ("This section does not alter the law on tolling of the statute of limitations nor does it apply to causes of action which have accrued before this Act becomes effective."). To accept Autovest's argument is to also support the notion that the original drafters of the Code intended to override any and all mandatory provisions related to tolling law in all of the *various jurisdictions* that have adopted Subsection (4). We consider that highly unlikely. Autovest points to no history or comment evincing such an intent. It is more likely that the Code's drafters intended to limit the scope of the UCC regarding tolling law to respect the variance in the common law among jurisdictions.

**{25}** In the alternative, Autovest asks us to recognize a "common law partial payment rule." As the Court of Appeals noted, our courts have not yet recognized a common law rule. *Agosto*, 2021-NMCA-053, ¶ 18. However, the COA did not further analyze the issue because it was not properly before them. *Id.* Autovest counters that the district court's dismissal of its complaint sua sponte deprived it of the opportunity to be heard on the issue. We conclude that Autovest had ample opportunity to present the issue: first, in their motion for summary judgment, where Autovest argued that the partial payment rule revived its claim, and then, in their brief in chief to the Court of Appeals, where Autovest cited numerous cases grounded in the common law without arguing for a common law rule. We agree with the judgment of the Court of Appeals that this question was not properly before it on appeal. *Agosto*, 2021-NMCA-053, ¶ 18. Therefore, this Court is precluded from reaching the merits of the issue now. Rule 12-502(C)(2)(e).

**{26}** To the extent this remains an open question, we note that New Mexico's partial payment doctrine has existed solely in statute. Originally enacted in 1880 by our territorial legislature, the initial version of Section 37-1-16 did not permit the revival of claims by partial payment. 1880 N.M. Laws, ch. 5, § 13 ("Causes of action founded upon contract shall be revived by an admission that the debt is unpaid, as well as by a new promise to pay the same; but such admission or new promise must be in writing, signed by the party to be charged therewith."). It was not until 1957, four years prior to the adoption of the UCC, that the Legislature added the partial payment term to the statute. NMSA 1953, § 23-1-16 (1957). Rather than draft a new partial payment provision outside of the preclusive effect of the exclusion provision, the Legislature placed the term within the reach of Section 37. We also note that we have uncovered no case law, nor did Autovest cite any, suggesting that any New Mexico court has ever recognized the common law partial payment doctrine. Neither can we say that there are apparent or persuasive justifications for doing so now.

## III. POLICY ANALYSIS

**{27}** Autovest and Amicus raise a policy argument that adopting the chosen language of the Legislature will force creditors to bring suit after each missed installment payment, flooding courts with unnecessary litigation. We are unpersuaded that a parade of horribles results from our interpretation. Rather, the actual consequence of accepting Autovest's argument would be to saddle consumers with the risk of zombie debt, allowing the revival of an otherwise-time-barred debt whenever a debtor makes a partial payment⸺no matter the minimal amount of the payment or the number of years since default.

**{28}** The statute of limitations in a breach of contract action "begins to run from the time of the breach." *Welty v. W. Bank of Las Cruces*, 1987-NMSC-066, ¶ 8, 106 N.M. 126, 740 P.2d 120. Installment contracts require continuous performance, so that partial breaches may occur with each missed payment. Restatement (Second) of Contracts § 243 cmt. c. (Am. L. Inst. 1981) ("[A] breach as to any number less than the whole of such installments gives rise to a claim merely for damages for partial breach."). With each partial breach, a new statute of limitations begins to run. *Welty*, 1987-NMSC-066, ¶ 9 ("[U]nder contract obligations payable by installments, the statute [of limitations] would have begun to run only with respect to each installment when due.") Autovest and Amicus argue that recovery of missed payments would require separate lawsuits against a consumer after each breach.

**{29}** Autovest's rationale is not incorrect as much as incomplete. Installment contracts for cars create a security interest in the item being purchased. *See generally* NMSA 1978, § 58-19-2(F) (2019) (defining a retail installment contract as "an agreement . . . pursuant to which the title to or a lien upon the motor vehicle that is the subject matter of a retail installment transaction is retained or taken by a retail seller from a retail buyer as security for the buyer's obligation"). As in this case, the agreement typically includes an acceleration provision allowing the lender to require immediate and full payment of the balance, including the right to repossess the car. *See* NMSA 1978, § 55-9-623 cmt. 2 (2001) (explaining that when "the entire balance of a secured obligation has been accelerated," redemption of the collateral requires "payment in full of all monetary obligations"). The lender-creditor may do so without any notice to the consumer. NMSA 1978, § 55-9-609(a)(1), (b)(2) (2001) ("After default, a secured party . . . may take possession of the collateral . . . and may proceed . . . without judicial process, if it proceeds without breach of the peace."). Once the acceleration clause is invoked, the limitation period will begin "with respect to the *whole indebtedness* only from the date of an exercise of the option to declare the whole indebtedness due." *Welty*, 1987-NMSC-066, ¶ 9 (emphasis added); *see also LSF9 Master Participation Tr. v. Sanchez*, 2019-NMCA-055, ¶ 12, 450 P.3d 413 (same); 51 Am. Jur. 2d *Limitations of Actions* § 146 (2011) ("Thus, even if a [debt] is payable in installments, once [the] debt is accelerated, the entire amount is due, and the statute of limitations begins to run on the entire debt.").

**{30}** In practice, when the creditor invokes the acceleration clause to demand the remaining balance of the loan, a new statute of limitations starts to run. This limitation

period is separate from the ones accruing with each missed installment payment. Thus, the creditors would not have to bring an action for each missed payment.

{31}    The UCC also provides an avenue that avoids the flood of unnecessary litigation forecasted by Autovest. The UCC allows parties to modify an agreement without consideration, establishing a new agreement that has not yet been breached. NMSA 1978, § 55-2-209(1) (1961, amended 2023). Therefore, creditors may request a signed, informed consent from the buyer to establish a new statute of limitations.[9] Why would a buyer agree? Because the creditor has the leverage of the acceleration provision, which includes repossession of the car.

{32}    With these mechanisms already in place, it is of little surprise that Autovest and Amicus cite no examples of a parade of horribles in this jurisdiction or others. If we were to adopt Autovest's interpretation, the actual sea change would occur in the time period *after* the acceleration provision has been invoked. As described above, once the acceleration provision is exercised, the creditor has four years in which to file an action to recover any deficiency, marking the end of the story for the consumer. Under Autovest's proposed statutory regime, whenever a creditor convinces a consumer to pay any minimal amount towards a deficiency for a sale of goods, the four-year clock would restart, regardless of whether the debt is time-barred. *Davis v. Savage*, 1946-NMSC-011, ¶ 28, 50 N.M. 30, 168 P.2d 851 ("In considering the revival of causes of action upon the indebtedness by acknowledgment that the debt is unpaid, or the promise to pay the same, it is generally regarded as immaterial whether the acknowledgment precedes or follows the bar."); *Lea Cnty. State Bank v. Markum Ranch P'ship*, 2015-NMCA-026, ¶ 11, 344 P.3d 1089 ("[O]ur case law and other legal authorities are clear that revival works to restart the running of the statute of limitations before, as well as after, the statute of limitations has expired." (footnote and internal quotation marks omitted)).

{33}    This outcome is irreconcilable with the Legislature's stated intent. Once again, the official comments provide supportive guidance. *See State ex rel. King v. B & B Inv. Grp., Inc.*, 2014-NMSC-024, ¶ 41, 329 P.3d 658 (examining the UCC's official comments to discern the legislative intent in drafting NMSA 1978, Section 55-2-302 (1961)). The UCC's official comments state that "[t]his article . . . selects a four year period as the most appropriate to modern business practice. This is within the normal commercial record keeping period." Section 55-2-725 cmt. Allowing for zombie debt would upend the four-year limitation, permitting forever-revival of claims if a debtor attempts to repay any minimal amount towards the deficiency.

{34}    It is not the purview of this Court to stop a bad deal; individuals are responsible for their own decisions. *Armstrong v. Csurilla*, 1991-NMSC-081, ¶ 48, 112 N.M. 579, 817 P.2d 1221 ("It is not the function of courts to remake bad contracts that competent parties voluntarily make for themselves. It is the function of courts to right wrongs and

---

9Section 55-2-725(1) states that the "original agreement" may not have a limitation period for a breach of contract that is less than one year or greater than four. This does not appear to preclude a party from establishing a new agreement that has the effect of extending the statute of limitations beyond the date of the first agreement's four-year limitation period.

correct injustices by applying legal rules and principles . . . ."). But absent a command from the Legislature, a person should not have to submit to perpetual debt for the mistake of purchasing a car under less-than-desirable terms. The plain and fair reading of the statutes supports this principle.

## IV.    CONCLUSION

**{35}**    We hold that Section 37-1-16's partial payment rule does not override or otherwise supersede the mandatory terms of the exclusion provision. We, therefore, affirm the Court of Appeals and remand each case to its respective district court to amend the judgment consistent with our holdings.

**{36}    IT IS SO ORDERED.**

**DAVID K. THOMSON, Chief Justice**

**WE CONCUR:**

**MICHAEL E. VIGIL, Justice**

**C. SHANNON BACON, Justice**

**BRIANA H. ZAMORA, Justice**

**ERIN B. O'CONNELL, Judge**
**Sitting by designation**