This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-41208

**ANITA DILLEY,**

Plaintiff-Appellee,

v.

**UNM SANDOVAL REGIONAL
MEDICAL CENTER,**

Defendant-Appellant,

**APPEAL FROM THE DISTRICT COURT OF SANDOVAL COUNTY
James A. Noel, District Court Judge**

Law Office of Nathan Cobb
Nathan Cobb
Albuquerque, NM

Jones Law Firm
Alexandra Jones
Albuquerque, NM

for Appellee

Conklin, Woodcock & Ziegler, P.C.
John K. Ziegler
Joseph C. Haupt
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**IVES, Judge.**

**{1}**     UNM Sandoval Regional Medical Center (Defendant) filed the instant interlocutory appeal following the district court's entry of an order partially denying Defendant's motion to dismiss. We granted the application and issued a notice of proposed summary disposition in which we proposed to reverse. The parties have filed responsive memoranda. After due consideration, we adhere to our initial assessment. We therefore reverse in part and remand for further proceedings consistent herewith.

**{2}**     The relevant background information has previously been set forth. To briefly reiterate, Plaintiff was formerly employed with Defendant. [Appl. 2; RP 1-2] Following her resignation she filed the underlying civil action, advancing claims for retaliatory discharge in tort and under the Whistleblower Protection Act (WPA), NMSA 1978, §§ 10-16C-1 to -6 (2010). [RP 1-5] Defendant promptly moved to dismiss, arguing that its status as a private, nonprofit corporation under the University Research Park and Economic Development Act (URPEDA), NMSA 1978, §§ 21-28-1 to -25 (1989, as amended through 2022),[1] provided immunity from both claims. [RP 12-27] The district court granted in part and denied in part Defendant's motion. [RP 81-85; 394-98] With respect to the tort claim, the district court acknowledged that the URPEDA specifically provides that research park corporations are granted immunity from liability as provided in the Tort Claims Act, and that no waiver of immunity has been provided for claims of this nature. [RP 84-85; 397-98] *See* § 21-28-7(C) (1998) ("A research park corporation, its officers, directors and employees shall be granted immunity from liability for any tort as provided in the Tort Claims Act."). However, with respect to the WPA claim, the district court held that Defendant qualifies as a public employer subject to suit. [RP 397-98] In so doing the district court adopted by reference the reasoning articulated by another district court judge in a case pending in the Second Judicial District Court, *Mody v. Board of Regents of the University of New Mexico UNM Health Sciences Center, et al.*, D-202-CV-2020-04043. [RP 84-85, 397-98] The record in *Mody* reflects that the district court perceived the WPA and the URPEDA to be in conflict, and applying the general/specific rule, it ultimately concluded that URPEDA entities may be characterized as public employers under the WPA, specifically NMSA 1978, Section 10-16C-2(C)(3) (2010) (defining "public employer" for purposes of the WPA to include "any entity or instrumentality of the state specifically provided for by law").

**{3}**     On appeal Defendant contends that the district court's analysis relative to the viability of the WPA claim is flawed. In view of its status under the URPEDA, Defendant contends that it cannot be characterized as a public employer for purposes of the WPA.

**{4}**     Because the issue arises out of the partial denial of a motion to dismiss and presents questions of statutory interpretation, we apply de novo review. *See Cordova v. Cline*, 2017-NMSC-020, ¶ 11, 396 P.3d 159 ("We review the interpretation of statutory language de novo."); *Padilla v. Wall Colmonoy Corp.*, 2006-NMCA-137, ¶ 7, 140 N.M. 630, 145 P.3d 110 ("We review the denial of a motion to dismiss de novo.").

---

[1]Section 21-28-7 was amended during the pendency of this appeal. We apply the version in effect at the time of the events giving rise to this lawsuit.

**{5}** As we observed in the notice of proposed summary disposition, the precise issue presented in this case was recently addressed in *Castro v. University of N.M. Medical Group*, A-1-CA-39933, mem. op. (N.M. Ct. App. Dec. 7, 2023) (nonprecedential). Although memorandum opinions do not constitute binding precedent, they may be considered for persuasive value. *See* Rule 12-405(A) NMRA. Although Plaintiff focuses upon *Castro*'s limitations and urges us to overrule it, [MIO 13-14] we find *Castro* to be persuasive, and essentially adhere to its analysis.

**{6}** "In construing a statute, we must ascertain and give effect to the intent of the Legislature. To accomplish this, we apply the plain meaning of the statute unless the language is doubtful, ambiguous, or an adherence to the literal use of the words would lead to injustice, absurdity or contradiction." *Nguyen v. Bui*, 2023-NMSC-020, ¶ 15, 536 P.3d 482 (internal quotation marks and citation omitted). *See also Stennis v. City of Santa Fe*, 2010-NMCA-108, ¶ 10, 149 N.M. 92, 244 P.3d 787 ("Our courts have repeatedly observed that a statute's plain language is the most reliable indicator of legislative intent."); *see also Truong v. Allstate Ins. Co.*, 2010-NMSC-009, ¶ 37, 147 N.M. 583, 227 P.3d 73 ("[W]hen a statute contains language which is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation." (internal quotation marks and citation omitted)). "Because we are analyzing the relationship between two statutes, we read the statutes together, presuming the [L]egislature did not intend to enact a law inconsistent with existing law. Thus, two statutes covering the same subject matter should be harmonized and construed together when possible in a way that facilitates their operation and the achievement of their goals." *Autovest, L.L.C. v. Agosto*, 2025-NMSC-001, ¶ 11, 563 P.3d 811 (omission, internal quotation marks, and citation omitted).

**{7}** The Legislature enacted the URPEDA in 1989, in part, to allow universities to form "research park corporations" under the Nonprofit Corporation Act, and "to promote, develop and administer research parks or technological innovations for scientific, educational and economic development opportunities." Section 21-28-4(A). The URPEDA makes clear that research park corporations are "separate and apart from the state and the university." *Id.* They are governed by a board of directors appointed by the university's regents, and may sue and be sued in their corporate names. Sections 21-28-4(B), -6(B).

**{8}** The URPEDA specifically provides the following limitations on suits against research park corporations:

> A. *A research park corporation shall not be deemed an agency, public body or other political subdivision of New Mexico, including for purposes of applying statutes and laws relating to personnel*, procurement of goods and services, meetings of the board of directors, gross receipts tax, disposition or acquisition of property, capital outlays, per diem and mileage and inspection of records.
>
> B. A research park corporation shall be deemed:

(1)     an agency or other political subdivision of the state for purposes of applying statutes and laws relating to the furnishing of goods and services to the university that operates it and the risk management fund; and

(2)     a public employer for the purposes of the Public Employee Bargaining Act (PEBA)[, NMSA 1978, §§ 10-7E-1 to -26 (2003, as amended through 2020),] if it owns, operates or manages a health care facility or employs individuals who work at a health care facility.

C.     A research park corporation, its officers, directors and employees shall be granted immunity from liability for any tort as provided in the Tort Claims Act (TCA)[, NMSA 1978, §§ 41-4-1 to -27 (1976, as amended through 2020)]. A research park corporation may enter into agreements with insurance carriers to insure against a loss in connection with its operations even though the loss may be included among losses covered by the risk management fund of New Mexico.

Section 21-28-7 (1998) (emphasis added).

**{9}**     The WPA, in turn, prohibits a public employer from taking retaliatory action against a public employee. *See* § 10-16C-3. It defines a "public employer" as:

(1) any department, agency, office, institution, board, commission, committee, branch or district of state government;

(2) any political subdivision of the state, created under either general or special act, that receives or expends public money from whatever source derived;

(3) any entity or instrumentality of the state specifically provided for by law; and

(4) every office or officer of any entity listed in Paragraphs (1) through (3) of this subsection.

Section 10-16C-2(C).

**{10}**     As quoted above, the WPA's definition of "public employer" explicitly includes the terms "agency" and "political subdivision." Section 10-16C-2(C)(1)-(2). This terminology overlaps with the URPEDA language, which makes clear that research park corporations "*shall not* be deemed" agencies or political subdivisions of the state, "including for purposes of applying statues and law relating to personnel," such as the WPA. Section 21-28-7(A) (1998) (emphasis added). This unambiguous language supplies a strong indication that the Legislature did not intend for the WPA to apply to

research park corporations. *See* NMSA 1978, § 12-2A-19 (1997) ("The text of a statute or rule is the primary, essential source of its meaning."); *N.M. Indus. Energy Consumers v. N.M. Pub. Regul. Comm'n*, 2007-NMSC-053, ¶ 20, 142 N.M. 533, 168 P.3d 105 ("[T]wo statutes covering the same subject matter should be harmonized and construed together when possible, in a way that facilitates their operation and achievement of their goals." (emphasis, internal quotation marks, and citation omitted)).

**{11}** Plaintiff suggests that the inclusion of the term "other" in the operative portion of Section 21-28-7(A) (1998), providing that research park corporations "shall not be deemed an agency, public body, or *other* political subdivision" of the state (emphasis added), signifies that Section 21-28-7(A) (1998) only prohibits classification of research park corporations as political subdivisions. [MIO 16-19] We reject this interpretation, as it would deprive the statutory reference to agencies and public bodies of meaning. *See Fowler v. Vista Care*, 2014-NMSC-019, ¶ 7, 329 P.3d 630 (observing that clear and unambiguous statutory language must be given effect, and that the courts "will not read any provision of [a] statute in a way that would render another provision of the statute null or superfluous" (internal quotation marks and citation omitted); *Am. Fed'n of State, Cnty. & Mun. Emps. (AFSCME) v. City of Albuquerque*, 2013-NMCA-063, ¶ 5, 304 P.3d 443 ("Statutes must also be construed so that no part of the statute is rendered surplusage or superfluous." (internal quotation marks and citation omitted)).

**{12}** Although the foregoing statutory language makes clear that research park corporations cannot be characterized as agencies or political subdivisions of the state, the URPEDA does not explicitly address "entit[ies] or instrumentalit[ies] of the state specifically provided for by law" as mentioned in Section 10-16C-2(C)(3). Accordingly, the question remains whether Defendant could be characterized as an "entity or instrumentality of the state specifically provided for by law," *id.*, such that the WPA might apply. Below, by its adoption of the *Mody* court's rationale, the district court concluded that Defendant should be regarded as an "entity or instrumentality of the state specifically provided by law" and therefore a "public employer" for purposes of the WPA. [RP 397]

**{13}** As we observed in *Castro*, A-1-CA-39933, mem. op. ¶ 15, "[a]lthough the plain language in the URPEDA does not explicitly preempt a research park corporation from being deemed an "entity or instrumentality of the state, under Section 10-16C-2(C)(3) of the WPA," the question presents itself whether that phrase falls within the intended scope and meaning of the term "public body," as it appears within Section 21-28-7(A) (1998) of the URPEDA. On this critical point, as in *Castro*, we find nothing within the briefing that elucidates. [MIO 13-20]

**{14}** In an apparent effort to supply the deficiency, Plaintiff cites various authorities addressing distinctions between "political subdivisions" of the state, "arms of the state," "alter egos" of the state, and "instrumentalities of the state." [MIO 19] However, insofar as none of these authorities address 'public bodies,' they are unhelpful.

**{15}** Ultimately, no authority has been identified that distinguishes an "entity or instrumentality of the state" from a "public body." In the absence of such authority, we perceive no substantive distinction between the terms. Accordingly, for the present purposes, we regard them as substantially equivalent. *See, e.g.*, *Castro*, A-1-CA-39933, mem. op. ¶ 15 (taking a similar approach).

**{16}** In view of the foregoing, characterizing Defendant is an "entity or instrumentality of the state" within the meaning of Section 10-16C-2(C)(3) would violate the URPEDA's directive *not to* deem a research park corporation a "public body," as specified in Section 21-28-7(A) (1998). We must avoid such an interpretation, as it would create needless conflict between the statutes. *See Badilla v. Wal-Mart Stores E., Inc.*, 2015-NMSC-029, ¶ 49, 357 P.3d 936 (observing that statutes should be harmonized; and where conflict can be avoided, there is no need to resort to the general/specific rule).

**{17}** Our conclusion finds further support in the latter portion of Section 21-28-7(B) (1998), identifying the few exceptions to the general rule that research park corporations are not to be deemed agencies, public bodies or other political subdivisions of the state. This underscores the general expression of legislative intent to preclude research park corporations from being treated as public employers, unless otherwise specifically directed. *See Augustin Plains Ranch v. D'Antonio*, 2023-NMCA-001, ¶ 13, 521 P.3d 1226 ("[T]he Legislature knows how to include language in a statute if it so desires." (internal quotation marks and citation omitted)). The fact that the WPA does not appear among those limited exceptions makes the ultimate resolution of this matter all the more clear. *See Elite Well Serv., LLC v. N.M. Tax'n & Revenue Dep't*, 2023-NMCA-041, ¶ 19, 531 P.3d 635 ("We will not interpret a statute to create an exception not reflected in the plain language.").

**{18}** Plaintiff now suggests that the exception identified in Section 21-28-7(B)(1) (1998), by which research park corporations are deemed agencies or other political subdivisions of the state "for purposes of applying statutes and laws relating to the furnishing of goods and services to the university that operates it and the risk management fund," should somehow apply. [MIO 20-22] Insofar as Plaintiff failed to raise this argument below, we question whether it is properly presented on appeal. *See Woolwine v. Furr's, Inc.*, 1987-NMCA-133, ¶ 20, 106 N.M. 492, 745 P.2d 717 ("To preserve an issue for review on appeal, it must appear that an appellant fairly invoked a ruling of the trial court on the same grounds argued in the appellate court."). In any event, it seems reasonably self-evident that this pertains to procurements. *See Trace v. UNM Hosp.*, 2015-NMCA-083, ¶ 18, 355 P.3d 103 (observing that "[t]he Procurement Code applies to all expenditures by state agencies for the procurement of goods and services from private entities"). Plaintiff offers no persuasive argument by which the WPA could properly be regarded as a statute or law "relating to the furnishing of goods and services," and we do not perceive it to be subject to such characterization.

**{19}** Ultimately, in the absence of an exception for purposes of applying the WPA, we perceive no principled basis for recognizing one. Concluding that the WPA language created an exception to URPEDA's general prohibition against treating research park

corporations as agencies, public bodies, or other political subdivisions of the state would read into the statutes language that is not there. We decline to do this. *See Reule Sun Corp. v. Valles*, 2010-NMSC-004, ¶ 15, 147 N.M. 512, 226 P.3d 611 ("Under the plain meaning rule, when a statute's language is clear and unambiguous, we will give effect to the language and refrain from further statutory interpretation. We will not read into a statute language which is not there, especially when it makes sense as it is written." (internal quotation marks and citation omitted)); *see also Janet v. Marshall*, 2013-NMCA-037, ¶ 296 P.3d 1253 ("[T]he determination of who exactly is to be liable is made by the Legislature as set out in statute, and here the Legislature declined to extend liability . . . [w]e cannot extend the range of liability by reading into a statute language that is not there, especially when the statute makes sense as written." (internal quotation marks and citations omitted)).

**{20}** In an effort to avoid this result, Plaintiff contends that the URPEDA should be more narrowly read, as it is in derogation of the common law, and that the WPA should be more broadly read, in light of its remedial purpose. [MIO 1, 16] However, we are not persuaded that these "peripheral rules of statutory construction" aid or materially affect our analysis. *See Estate of Brice v. Toyota Motor Corp.*, 2016-NMSC-018, ¶ 33, 373 P.3d 977. Given the clarity of the plain language of the statutory provisions at issue, specifically Section 21-28-7 (1998) of the URPEDA, we reject Plaintiff's invited approach, which would "elevate formalistic legal abstractions" above plain language and meaning. *Estate of Brice*, 2016-NMSC-018, ¶ 33 (alteration, internal quotation marks, and citation omitted).

**{21}** It has been further suggested that the foregoing analysis leads to an absurd result. [RP 397] We cannot agree. As this Court observed when addressing a similar contention in the case of *Gardner v. N.M. Health Ins. Exch.*, 2023 WL 2181234 mem. op. ¶ 14 (N.M. Ct. App. Feb. 23, 2023) (nonprecedential), the Legislature may provide limitations and exemptions from liabilities; doing so is a policy decision. "Unless a statute violates the Constitution, we will not question the wisdom, policy, or justness of legislation enacted by our Legislature." *Aeda v. Aeda*, 2013-NMCA-095, ¶ 11, 310 P.3d 646 (alteration, internal quotation marks, and citation omitted).

**{22}** In closing, we acknowledge Plaintiff's most recent argument, that a different result might properly be reached in this matter by applying the alter ego analysis set forth in *Mem'l Med. Ctr., Inc. v. Tatsch Constr., Inc.*, 2000-NMSC-030, 129 N.M. 677, 12 P.3d 431. [MIO 2-13] However, we find no indication that Plaintiff advanced this argument below. Insofar as the *Tatsch* "totality of the circumstances" inquiry is highly fact-dependent, *see id.* ¶¶ 34-35, it is not properly raised for the first time on appeal. *See Thoma v. Thoma*, 1997-NMCA-016, ¶ 30, 123 N.M. 137, 934 P.2d 1066 ("We will not affirm on a fact-dependent ground not relied on by the district court, because an appellate court may not engage in fact-finding and because the appellant did not have the opportunity to present relevant evidence."). Moreover, as *Tatsch* makes clear, the analytical approach undertaken in that case was precipitated by the absence of plain language specifying whether the Legislature intended the statutes at issue to apply. *Id.* ¶ 27. As described above, the URPEDA supplies the clarity that was lacking in *Tatsch*.

As a consequence, we find no occasion for resort to the multi-factored alter ego analysis undertaken in *Tatsch*.

**{23}** In light of the foregoing, we conclude that Defendant is not subject to suit under the WPA. We therefore reverse and remand for further proceedings consistent herewith.

**{24}** **IT IS SO ORDERED.**

**ZACHARY A. IVES, Judge**

**WE CONCUR:**

**JACQUELINE R. MEDINA, Judge**

**SHAMMARA H. HENDERSON, Judge**