The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

Opinion Number:

Filing Date: June 30, 2025

**NO. S-1-SC-40215**

**CREIG BUTLER,**

Judgment Creditor-Respondent,

v.

**MOTIVA PERFORMANCE ENGINEERING, LLC,**

Judgment Debtor,

and

**DEALERBANK FINANCIAL SERVICES, LTD, and ARMAGEDDON HIGH PERFORMANCE SOLUTIONS, LLC,**

Relief Defendants,

and

**WILLIAM S. FERGUSON,**

Relief Defendant-Petitioner.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Victor S. Lopez, District Judge**

Kennedy, Hernandez & Harrison, P.C.

Paul J. Kennedy

Jessica M. Hernandez

Elizabeth A. Harrison

Albuquerque, NM

for Petitioner

Modrall, Sperling, Roehl, Harris & Sisk, P.A.

Spencer L. Edelman

Elizabeth A. Martinez

Laura M. Unklesbay

Taryn F. Hanrahan

Albuquerque, NM

for Respondent

**OPINION**

**BACON, Justice.**

{1} Yet once more, we clarify the scope of our courts' extraordinary contempt power to ensure the Judiciary does not act lawlessly in the course of upholding the law. In this case, we conclude the district court's use of remedial contempt procedures to impose punitive contempt sanctions was clearly in error and deprived Petitioner William Ferguson of due process.[1] We consider, however, whether the sanctions can be affirmed in the alternative under the district court's inherent powers or Rule 1-011(A) NMRA (Rule 11). We hold that the sanctions cannot be upheld under the court's inherent powers because sanctions imposed through inherent powers are, with limited exceptions, circumscribed by our contempt law and subject to the same due process standards. However, we hold that due process requirements under Rule 11 are not coterminous with those for contempt, and because Ferguson does not challenge the district court's imposition of sanctions under Rule 11 for abuse of discretion or argue how he was deprived of due process specifically under

---

[1]In accordance with *In re Marshall*, we use the terms "remedial" and "punitive" contempt throughout this opinion. 2023-NMSC-009, ¶ 23, 528 P.3d 670 ("Contempt charges formerly classified as either 'civil' or 'criminal' should instead be regarded as 'remedial' or 'punitive' to more accurately reflect the distinctions between the different types of contempt.")

Rule 11, we uphold the district court's sanctions on Rule 11 grounds. We thus affirm the Court of Appeals in part and reverse in part, and remand this matter to the district court for proceedings consistent with this opinion.

## I.   BACKGROUND

### A.   Ferguson's Conduct

{2}   Respondent Creig Butler filed suit against Ferguson's company, Motiva Performance Engineering, for Motiva's failed attempt to upgrade Butler's H3 Hummer. A jury found Motiva liable for breach of contract, fraudulent misrepresentation, and violation of the Unfair Practices Act. The district court entered judgment against Motiva in the amount of $292,000 plus interest, costs, and attorney's fees. Ferguson was both a managing member of Motiva and a licensed attorney. He and his law firm, Will Ferguson and Associates, represented Motiva throughout the litigation. Two months after the verdict, Motiva shut down operations.

{3}   At the time of the verdict, Motiva owned a 2012 Ferrari FF. A few days after the verdict but before judgment for damages, Ferguson transferred title of the Ferrari from Motiva to another one of his companies called Dealerbank. Following the judgment for damages, the district court issued a Writ of Execution directing the sheriff to seize Motiva's assets to enforce the judgment. A sheriff's deputy attempted

to execute the writ, but was told by Ferguson there was a landlord's lien against Motiva for unpaid rent and so he could not seize Motiva's inventory. The deputy left and no assets were seized.

{4}   Butler then filed a Motion for Declaration of Ownership (Ownership Motion) asking the district court to determine who owned the Ferrari. He also filed a Verified Application for Writ of Attachment or in the Alternative, for a Preliminary Injunction (PI Application) to prevent Ferguson from potentially draining assets while the Ownership Motion was litigated.

{5}   The district court held a hearing on the PI Application, and orally stated it was inclined to "allow an attachment to the Ferrari until we figure out what is going on here." The court instructed the parties to work together to draft a preliminary injunction and prepare an order reflecting "the TRO[] [and] the attachment." One day after the injunction hearing, and while corresponding with Butler's counsel about the draft order for the court, Ferguson applied for a $120,000 loan from Main Bank, with Dealerbank pledging the Ferrari as collateral. Ferguson signed the loan documents on his own behalf and on behalf of Dealerbank. After closing the loan, Main Bank noted its interest in the Ferrari by obtaining a new certificate of title listing Main Bank as the first lienholder. Subsequently, the district court entered its written Preliminary Injunction and Order on Application for Writ of Attachment. In

the order, the court instructed Ferguson to "keep the Ferrari titled in Dealerbank's name." Ferguson never disclosed the Main Bank lien to the court.

{6}     Approximately five months later, the district court held a bench trial on the Ownership Motion. Ferguson introduced into evidence an old copy of the Ferrari's title that did not reflect the Main Bank lien. After the bench trial, the court entered its findings of fact and order on the Ownership Motion and declared the "title of Dealerbank to the Ferrari should be . . . set aside in favor of Motiva's prior and superior title." The court also ordered Ferguson to file an accounting of settlement funds (accounting) to address an insurance payment from Allstate to Motiva that had never been paid to Motiva. Four days later Motiva declared bankruptcy. Ferguson timely complied with the district court's order and filed the accounting, which stated that the insurance proceeds—totaling $40,948—had been deposited into his personal bank account rather than paid to Motiva. However, he failed to disclose—or alternatively backdated—a promissory note wherein he loaned $41,000 to Motiva. Soon after, Butler discovered the Main Bank lien on the Ferrari because it was listed on Motiva's bankruptcy filings.

{7}     Butler filed a Motion for Order to Show Cause (OTSC), arguing Ferguson should show cause why he should not be held in contempt of court and sanctioned for remedial contempt and referred to the District Attorney for punitive contempt.

The district court entered its OTSC and stated its "concerns that [Ferguson] . . . violated this Court's Preliminary Injunction and Order on Application for Writ of Attachment." The court further specified the violations of the preliminary injunction "include, without limitation, granting a lien to Main Bank on the 2012 Ferrari."

**B.      The Sanctions Order**

{8}      The district court held a hearing on the OTSC and subsequently issued its "Findings of Fact and Conclusions of Law on Order to Show Cause and Order of [Remedial] Contempt and Sanctions Against Dealerbank, [Ferguson], and The Law Firm" (Sanctions Order). Finding Ferguson had repeatedly disregarded its orders, the court offered a non-exhaustive list of acts in support of that finding. This conduct included changing the Ferrari's title from Motiva to Dealerbank immediately after the jury verdict, placing the Main Bank lien on the Ferrari, introducing an old certificate of title for the Ferrari that hid the Main Bank lien, and failing to disclose or potentially backdating the promissory note to hide the transaction. The court held Ferguson *in what it called* remedial contempt and stated he may purge the contempt by (1) paying Butler to satisfy the $292,000 judgment in full plus interest, costs, and attorney's fees and (2) donating $50,000 to Roadrunner Food Bank. The court also noted in a subparagraph of the order that "[t]his [remedial] [c]ontempt and [s]anctions [o]rder is also appropriate under . . . Rule 1-011 NMRA because of

Ferguson's direct involvement, his supervisory and ownership control over the [l]aw [f]irm (and its attorneys), and Dealerbank, through willful misstatements in documents filed with this [c]ourt, as well as his omissions and arguments and testimony presented to the [c]ourt throughout this proceeding."

{9}    Within a month after issuance of the Sanctions Order, Ferguson filed a motion to reconsider. In his motion, he argued only that the evidence presented at the hearing did not warrant remedial contempt and sanctions. A day later, and before the district court ruled on his motion to reconsider, Ferguson appealed the Sanctions Order to the Court of Appeals. The district court later denied the motion to reconsider.

**C.    At the Court of Appeals**

{10}    Ferguson argued to the Court of Appeals, inter alia, that he was held in punitive contempt without due process. A Court of Appeals panel majority affirmed and concluded "the sanctions were appropriate under Rule 1-011 and the court's inherent powers even though [Ferguson] failed to preserve these issues because the preservation exceptions could apply." *Butler v. Ferguson*, A-1-CA-39546, mem. op. ¶ 6 (N.M. Ct. App. Nov. 16, 2023) (nonprecedential). In dissent, Judge Duffy explained she did not believe there was a preservation issue because there was no opportunity to object to the Sanctions Order prior to the district court entering its order. *Butler*, A-1-CA-39546, mem. op. ¶ 23 (Duffy, J., dissenting). Additionally,

although she agreed with the majority that the sanctions were "generally affirmable" under Rule 11 and Rule 11 went unchallenged by Ferguson, she expressed concern at the breadth of conduct the majority relied on to affirm on Rule 11 grounds. *Butler*, A-1-CA-39546, mem. op. ¶¶ 24-25 (Duffy, J., dissenting).

## II.   DISCUSSION

{11}   We granted certiorari to review two issues presented by Ferguson.[2] First, we consider whether the Court of Appeals erred by holding a motion to reconsider was necessary to preserve issues for appeal from the district court's final Sanctions Order. We conclude Ferguson did not need to file a motion to reconsider to preserve

---

[2]Ferguson additionally asked this Court to decide whether the donation requirement to Roadrunner Food Bank violated Articles IV, VI, and IX of the New Mexico Constitution. We quash certiorari on this issue because it was never raised in the Court of Appeals. In his docketing statement to the Court of Appeals, Ferguson only claimed it "violate[d his] rights, including his right to free speech, to be required to make a contribution to a particular charitable entity . . . in order to purge his contempt." Then, in his briefing to that Court, Ferguson argued the donation requirement to Roadrunner Food Bank was "impermissible, because it was not authorized by statute." Because he did not raise to the Court of Appeals whether the donation requirement violated Articles IV, VI, and IX of the New Mexico Constitution, that Court was unable to reach a decision on the issue. Therefore, we conclude it is not properly before this Court on certiorari. *See Autovest L.L.C. v. Agosto*, 2025-NMSC-001, ¶ 25, 563 P.3d 811 (concluding that when reviewing issues that come to this Court through writs of certiorari pursuant to Rule 12-502 NMRA, this Court is "precluded" from reaching the merits of an issue that was never before the Court of Appeals).

issues for appeal and the Court of Appeals erred in concluding otherwise. Accordingly, we reverse in part on this ground.

{12} Second, we consider whether the Court of Appeals erred by affirming the Sanctions Order under the district court's inherent powers and Rule 11 despite the lack of criminal-level due process safeguards that would have been required for the sanctions to be properly imposed under the court's contempt power. In addressing the second issue, we have rephrased the question Ferguson presented to this Court in his petition for writ of certiorari and argued in his briefings. There, he asked, "[w]hether the Court of Appeals erred by holding that a procedurally defective [punitive] contempt order may be affirmed under the less demanding standards for [remedial] contempt?" To ask the question presented by Ferguson is to answer it: No, of course a punitive contempt order issued without honoring necessary due process requirements cannot be affirmed. What we understand Ferguson is actually asking is whether the Sanctions Order that constitutes a violation of due process under the court's contempt power necessarily constitutes a violation of due process when imposed *on other grounds*—specifically, inherent powers or Rule 11.

{13} We conclude the Court of Appeals erred in holding that inherent powers were a valid alternative basis for the Sanctions Order, and reverse in part on that ground.

However, we conclude the Court of Appeals did not err in upholding the Sanctions Order under Rule 11, and we affirm on Rule 11 grounds, with clarification.

{14}  Our analysis proceeds in four parts. We begin by addressing the preservation issue raised by Ferguson. Next, and as a threshold matter to Ferguson's second issue, we explain why the sanctions imposed by the district court made the contempt punitive, and why under our contempt law Ferguson was entitled to criminal-level due process. We then discuss why the district court's inherent powers were not a valid alternative basis for the sanctions. Last, we explain why the sanctions were proper under Rule 11 despite the lack of criminal-level due process protections.

**A.  Ferguson Did Not Have to File a Motion to Reconsider to Preserve Issues for Appeal**

{15}  Ferguson's first issue, whether a motion to reconsider was necessary to preserve issues for appeal, is readily answered by our preservation rule:

> To preserve an issue for review, it must appear that a ruling or decision by the trial court was fairly invoked. If a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection does not thereafter prejudice the party.

Rule 12-321(A) NMRA. The Court of Appeals' majority held Ferguson did not preserve the issues for appeal because he "did not raise the issues below." *Butler*, A-1-CA-39546, mem. op. ¶ 7. The majority reasoned, "'In order to preserve an issue for appeal, [an appellant] must have made a timely and specific objection that

apprised the district court of the nature of the claimed error and that allows the district court to make an intelligent ruling thereon.'" *Id.* (alteration in original) (quoting *Sandoval v. Baker Hughes Oilfield Operations, Inc.*, 2009-NMCA-095, ¶ 56, 146 N.M. 853, 215 P.3d 791). In dissent, Judge Duffy concluded Ferguson did not have an opportunity to object to the Sanctions Order at the time it was made because the objectionable issues were only apparent on the face of the order, quoting Rule 12-321(A): "'If a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection does not thereafter prejudice the party.'" *Id.* ¶ 23 (Duffy, J., dissenting). While conceding Judge Duffy's point, the majority nonetheless held Ferguson could have filed, and actually *did* file, a motion to reconsider, but simply failed to address in that motion the issues he eventually raised on appeal. *Id.* ¶ 7 n.1.

{16} In accordance with the plain language of Rule 12-321(A), in addition to our "strong policy that courts should facilitate, rather than hinder, the right to appeal," *Kelly Inn No. 102, Inc. v. Kapnison*, 1992-NMSC-005, ¶ 27, 113 N.M. 231, 824 P.2d 1033, we agree with the dissent and conclude Ferguson did not need to file a motion

to reconsider to preserve issues for appeal.[3] Ferguson had no opportunity to object to the ruling "at the time it was made" because issues within the Sanctions Order only became apparent after the hearing and upon issuance of the order. *See* Rule 12-321(A). Any objection to the order, then, would necessarily have been made after, not "at the time," the order was made, and consequently, "the absence of an objection does not thereafter prejudice" Ferguson. *See* Rule 12-321(A).

{17}     That Ferguson filed a motion to reconsider on other grounds does not lead us to conclude he waived issues not presented in that motion. In his briefings, Butler argued, "having taken that opportunity [to move for reconsideration], . . . Ferguson was required to use it." Butler's argument, however, begs the question by failing to offer any reasoning or authority to support this conclusion. Absent such reasoning or authority, we assume none exists, *see In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 (stating that where a party cites no authority to support an argument we assume none exists), and decline to otherwise hinder

---

[3]While our holding does not make motions to reconsider necessary to preserve issues in final orders that are only apparent on the face of the order, we still encourage practitioners to file such motions for the sake of efficiency and preserving judicial resources, especially when, as in this case, the district court may be able to correct its order if properly alerted to the defects.

Ferguson's right to appeal. Therefore, we conclude Ferguson's challenge to the Sanctions Order is not barred by the preservation rule.

**B.      Ferguson Was Held in Indirect Punitive Contempt Without Due Process**

{18}     In the Court of Appeals, Ferguson contended the sanctions imposed made the contempt punitive and he was consequently deprived of due process because he was not afforded criminal-level due process protections. The Court of Appeals declined to address this issue and instead upheld the sanctions on inherent powers and Rule 11 grounds. *Butler*, A-1-CA-39546, mem. op. ¶¶ 8, 15. In so doing, the Court of Appeals tacitly concluded that even if the sanctions were an improper exercise of the district court's contempt power, they were affirmable on other grounds. *See id.* It is this tacit conclusion Ferguson now challenges here. Accordingly, we first consider whether Ferguson was held in punitive contempt without due process, as that question is potentially dispositive. We conclude he clearly was.

**1.      Standard of review**

{19}     "Whether the district court exercised its contempt power consistent with the purposes of [remedial] contempt is a mixed question of fact and law that we review de novo." *State ex rel. CYFD v. Mercer-Smith*, 2019-NMSC-005, ¶ 19, 434 P.3d 930.

**2.    Legal overview of the court's contempt power**

{20}    Under NMSA 1978, Section 34-1-2 (1851), all New Mexico courts have the power to "preserve order and decorum, and for that purpose to punish contempts by reprimand, arrest, fine or imprisonment, being circumscribed by the usage of the courts of the United States." This statutory grant of authority is "only declaratory of the common law," *State v. Clark*, 1952-NMSC-023, ¶ 5, 56 N.M. 123, 241 P.2d 328, and it is beyond dispute that "a court's authority to compel orderliness and compliance exists even in the absence of express statutory authority." *In re Marshall*, 2023-NMSC-009, ¶ 10, 528 P.3d 670; *see Concha v. Sanchez*, 2011-NMSC-031, ¶ 23, 150 N.M. 268, 258 P.3d 1060 ("'[C]ourts of Justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect and decorum in their presence, and submission to their lawful mandates.'" (quoting *Anderson v. Dunn*, 6 Wheat. 204, 19 U.S. 204, 227 (1821))). Put simply, the power to punish contempt is inherent, but supplemented by statute.

**3.    Remedial versus punitive contempt**

{21}    Contempts of court are classified as punitive or remedial. *Marshall*, 2023-NMSC-009, ¶ 15. As this Court has made clear, "the [traditional] classifications of contempt charges as 'civil' or 'criminal' are somewhat paradoxical as these classifications do not relate to the underlying charges in the proceedings or the type

of court in which the contempt occurs." *Id.* Therefore, "'civil' contempt should more precisely be referred to as 'remedial' contempt, and 'criminal' contempt should be referred to as 'punitive' contempt." *Id.* "The major factor in determining whether a contempt is [punitive] or [remedial] is the purpose for which the power is exercised." *Id.* ¶ 11 (internal quotation marks and citation omitted).

{22}    The remedial contempt power serves to "preserve and enforce the rights of private parties to suits and to compel obedience to the orders, writs, mandates, and decrees of the court." *Mercer-Smith*, 2019-NMSC-005, ¶ 20 (internal quotation marks and citation omitted). "If a court is exercising its [remedial] contempt power, it may impose compensatory . . . or coercive sanctions." *Id.* ¶ 22. "Compensatory sanctions may include damages or attorney's fees and are imposed for the purpose of compensating a party for pecuniary losses sustained due to the contempt." *Tran v. Bennett*, 2018-NMSC-009, ¶ 36, 411 P.3d 345. "Coercive sanctions may include 'fines, imprisonment, or other sanctions' designed 'to compel the contemnor to comply . . . with an order of the court.'" *Id.* ¶ 37 (citation omitted).

{23}    "Because [remedial] contempt sanctions are not punitive in nature, once the contemnor complies, the sanctions end." *Marshall*, 2023-NMSC-009, ¶ 12. "Thus, [a] [remedial] contempt defendant carries the keys of his prison in his own pocket. He can end the sentence and discharge himself of contempt at any moment by doing

what he has previously refused to do." *Id.* (first alteration in original) (internal quotation marks and citation omitted). With regard to requisite procedural requirements, "[remedial] contempt sanctions may be imposed by honoring the most basic due process protections—in most cases, fair notice and an opportunity to be heard." *Mercer-Smith*, 2019-NMSC-005, ¶ 22 (internal quotation marks and citation omitted). Further, to be fair to the contemnor, an order imposing a coercive sanction should state the actions the contemnor must take to purge the contempt. *See id.*

{24} As opposed to remedial contempt, the punitive contempt power seeks "'to vindicate the authority of the court.'" *Marshall*, 2023-NMSC-009, ¶ 11 (citation omitted). Punitive contempt proceedings "'are instituted to punish completed acts of disobedience that have threatened the authority and dignity of the court and are appropriate even after the contemnor is no longer acting contemptuously.'" *Id.* ¶ 13 (citation omitted). Punitive contempt is a "'crime in the ordinary sense; it is a violation of the law.'" *Id.* (citation omitted). A punitive contemnor is "'therefore entitled to due process protections of the criminal law, the specific nature of which will depend on whether the criminal contempt is categorized as direct or indirect.'" *Id.* (citation omitted).

## 4.    Direct and indirect contempt

{25}    "'Direct contempt is contemptuous conduct in the presence of the court.'" *Id.* ¶ 14 (emphasis and citation omitted). "'[D]irect contempts traditionally have been subject to summary adjudication [in order] to maintain order in the courtroom.'" *Id.* (first alteration in original) (citation omitted). "If feasible, even in summary proceedings for an act of direct contempt occurring in open court, an 'adequate opportunity to defend or explain one's conduct is a minimum requirement before imposition of punishment.'" *Concha*, 2011-NMSC-031, ¶ 27 (citation omitted).

{26}    Conversely, indirect contempt is contemptuous conduct "'committed outside the presence of the court.'" *Marshall*, 2023-NMSC-009, ¶ 14 (citation omitted). Indirect contempts "'must be resolved through . . . traditional due process procedures.'" *Id.* (citation omitted). This means indirect punitive contemnors are "entitled to the full panoply of due process protections afforded to criminal defendants." *Tran*, 2018-NMSC-009, ¶ 42. Specifically, indirect-punitive-contempt defendants have the right to appear and defend themselves in person, and by an attorney. *See* N.M. Const. art. II, § 14. They have the right to know the nature and cause of the accusation. *Id.*; *Norton v. Reese*, 1966-NMSC-154, ¶ 7, 76 N.M. 602, 417 P.2d 205. They have the right to confront witnesses against them and compel the attendance of their own witnesses. N.M. Const. art. II, § 14. They are "'presumed

innocent until found guilty beyond a reasonable doubt.'" *Tran*, 2018-NMSC-009, ¶ 42 (citation omitted); *Int'l Minerals & Chem. Corp v. Local 177, United Stone & Allied Prods. Workers*, 1964-NMSC-098, ¶ 10, 74 N.M. 195, 392 P.2d 343. They cannot be compelled to testify against themselves. *Tran*, 2018-NMSC-009, ¶ 42. And they have the right to present evidence. *See* NMSA 1978, § 34-1-3 (1915).

{27} The contemnor also has the right to a jury trial if the offense is serious. *Marshall*, 2023-NMSC-009, ¶ 21 (citing *Bloom v. Illinois*, 391 U.S. 194, 198 (1968) for the proposition that whether a right to trial by jury is implicated depends on whether a contempt offense is classified as petty or serious). Punitive contempt is a petty offense unless the punishment makes it a serious one. *See id.* ¶ 21 (recognizing "[t]he United States Supreme Court has accepted the view that 'criminal [or punitive] contempt is a petty offense unless the punishment makes it a serious one'" (second alteration in original)). If the punishment involves a prison sentence exceeding six months, the contempt offense is serious. *See id.* ¶ 22 (citing *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 826-27 (1994)); *cf.* NMSA 1978, § 34-8A-5(B)(3) (1981) (entitling a criminal defendant in metropolitan court to a jury trial if the penalty exceeds six months' imprisonment). If the punishment does not include imprisonment but only a fine, we recognize no bright-line amount for when the fine makes the contempt offense "serious." *See Marshall*,

2023-NMSC-009, ¶ 21 ("'[W]hen the legislature has not expressed a judgment as to the seriousness of an offense by fixing a maximum penalty which may be imposed, we are to look to the penalty actually imposed as the best evidence of the seriousness of the offense.'" (citation omitted)); *Seven Rivers Farm, Inc. v. Reynolds*, 1973-NMSC-039, ¶ 42, 84 N.M. 789, 508 P.2d 1276 ("[W]here . . . the sole punishment of the [punitive] contemnor is a fine we are free to make our own determination as to what is 'petty' and what is a 'serious' offense."), *abrogated on other grounds by Marshall*, 2023-NMSC-009, ¶¶ 2, 19; *Bagwell*, 512 U.S. at 837 n.5 ("The Court to date has not specified what magnitude of contempt fine may constitute a serious criminal sanction."); *but see United States v. Twentieth Century Fox Film Corp.*, 882 F.2d 656, 658 (2d Cir. 1989) (holding that no criminal contempt fine in excess of $100,000 can be levied against a corporation without a jury trial). As we do not recognize a bright-line amount where a contempt fine makes the offense "serious," the circumstances of the case dictate whether the offense is classified as petty or serious. *Marshall*, 2023-NMSC-009, ¶ 20.

**5.     Ferguson was held in indirect punitive contempt**

{28}     In this case, the sanctions imposed by the district court made the contempt punitive. First, the sanctions were not compensatory in nature. The requirement to satisfy the judgment in full was not compensatory because the $292,000 judgment

against Motiva did not arise from Ferguson's contemptuous conduct. Rather, the judgment arose from Motiva's tortious conduct. Also, the required donation to Roadrunner Food Bank was not compensatory because it did not serve to reimburse Butler for any loss suffered.

{29}     Second, the sanctions were not coercive. They were not imposed to compel Ferguson to comply with an order of the court.[4] The requirements to satisfy the judgment in full and donate $50,000 to Roadrunner Food Bank were punishments per se, not punishments used as tools to gain compliance. True, the district court reasoned the sanctions were partly "to ensure that Ferguson complies with future orders of this [c]ourt," but this is not the type of coercive punishment contemplated by our contempt jurisprudence. Contemnors may only be coerced into complying with current court orders, not future, yet-to-be-given orders. To permit this type of coercive punishment would effectively erase the remedial-punitive distinction by giving courts the power to cloak punitive sanctions under the mantle of coercion. Further, the district court did not give Ferguson a means to purge or discharge himself of the contempt by doing what he had previously refused to do. While the

---

[4]Here the district court could have compelled compliance with the order of the court by imposing a daily monetary fine for each day that passed until Ferguson transferred the title of the Ferrari back to Motiva.

Sanctions Order said Ferguson may "purge the [remedial] contempt as to him by . . . satisfy[ing] the [j]udgment in full" and donating "$50,000 to Roadrunner Food Bank," the order in effect conflated the sanctions with the measures Ferguson could take to end the sanctions, or "purge the contempt." Essentially, the district court imposed a monetary fine on Ferguson and determined he could discharge himself from the fine by paying it. This is not coercion—it is punishment.

{30} The district court's Sanctions Order was inconsistent with the purposes of remedial contempt; rather, the sanctions imposed rendered the contempt punitive. Because the punishable conduct occurred outside the presence of the district court, the punitive contempt was indirect. Therefore, Ferguson was entitled to criminal-level due process protections. Because he was not afforded those protections, the sanctions were an improper exercise of the district court's contempt power. Having concluded the sanctions imposed were an improper exercise of the district court's punitive-contempt powers, we turn to whether the sanctions were otherwise permissible under another source of authority. First, we look at inherent powers. Then, we consider Rule 11.

**C.  Inherent Powers Were Not a Valid Alternative Basis for the Sanctions Order**

{31} In this case, the district court referenced its inherent powers, but did not explicitly articulate inherent powers as an alternative basis for the sanctions. The

Court of Appeals majority inferred the sanctions were imposed under inherent powers based on the district court's reference alone. *See Butler*, A-1-CA-39546, mem. op. ¶ 13. As stated by the Court of Appeals: "[The district] court's clear understanding of the distinction between its [remedial] and [punitive] contempt powers and . . . repeated references to the court's inherent powers to sanction indicate that the court actually intended these sanctions to be imposed as an exercise of its inherent powers and not a misuse of its [remedial] contempt powers." *Id.* ¶ 15. We do not read the district court's order so generously. And even if these sanctions were imposed as an exercise of the district court's inherent powers, they were improper.

**1.     Standard of review**

{32}     We typically review a district court's imposition of sanctions under its inherent powers for an abuse of discretion. *State ex rel. N.M. State Highway & Transp. Dep't v. Baca*, 1995-NMSC-033, ¶ 26, 120 N.M. 1, 896 P.2d 1148. However, Ferguson does not argue to this Court that the Court of Appeals erred in concluding the sanctions were not an abuse of discretion under the district court's inherent powers. Rather, he only contends that he was necessarily deprived of due process to the extent the sanctions were imposed pursuant to inherent powers because the sanctions under our contempt law were punitive. Accordingly, to

address the issue Ferguson raises, we must solely determine whether punitive sanctions that warrant criminal-level due process protections under our contempt law can be imposed through inherent powers without such protections. This is a question of law. Accordingly, our review is de novo. *Cordova v. LeMaster*, 2004-NMSC-026, ¶ 10, 136 N.M. 217, 96 P.3d 778 ("Claims involving the denial of procedural due process are questions of law, which we review de novo.").

**2.      Overview of the court's inherent powers**

{33}    "It has long been recognized that a court must be able to command the obedience of litigants and their attorneys if it is to perform its judicial functions." *Id.* ¶ 11. "Such powers inhere in judicial authority and exist independent of statute." *Id.*; *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1992) ("Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." (citing *Anderson,* 6 Wheat. 204, 19 U.S. at 227)). Under its inherent powers, a court may "'fine for contempt, imprison for contumacy, [and] enforce the observance of orders.'" *Baca*, 1995-NMSC-033, ¶ 11 (citation omitted). A court may also invoke its inherent powers to sanction parties and attorneys to regulate its docket, promote judicial efficiency, and deter frivolous filings. *Id.* "A court's inherent power only

extends to conduct occurring before the court or in direct defiance of the court's authority." *Id.* ¶ 17.

### 3. Federal jurisprudence requires criminal-level due process protections when punitive sanctions are imposed pursuant to inherent powers

{34} The United States Supreme Court has explained what types of sanctions may be imposed under a federal court's inherent powers and what level of process is due under the Fifth Amendment. In *Goodyear Tire & Rubber Co. v. Haeger*, the Supreme Court explained when a court uses its inherent powers to fashion a sanction, the sanction must be compensatory rather than punitive "when imposed pursuant to civil procedures." 581 U.S. 101, 107-08 (2017). In *Goodyear*, a district court found Goodyear had engaged in an extensive course of misconduct throughout the litigation process, beginning with discovery fraud. *Id.* at 105. The district court invoked its inherent authority to sanction Goodyear and awarded $2.7 million to Haeger, which constituted the entire sum spent in "legal fees and costs since the moment, early in litigation, when Goodyear made its first dishonest discovery response." *Id.* at 105-06. The Ninth Circuit affirmed the award. *See Haeger v. Goodyear Tire & Rubber Co.*, 813 F.3d 1233, 1237, 1254 (9th Cir. 2016). The Supreme Court reversed the Ninth Circuit. *Goodyear*, 581 U.S. at 115. Writing for the Court, Justice Kagan explained when a federal court exercises its inherent authority to sanction bad-faith conduct by ordering a litigant to pay the other side's

legal fees, "the order is limited to the fees the innocent party incurred solely because of the misconduct—or put another way, to the fees that party would not have incurred but for the bad faith." *Id.* at 103-04. "[A] fee award may go no further than to redress the wronged party for losses sustained; it may not impose an additional amount as punishment for the sanctioned party's misbehavior. To level that kind of separate penalty, *a court would need to provide procedural guarantees applicable in criminal cases, such as a beyond a reasonable doubt standard of proof.*" *Id.* at 108 (emphasis added) (internal quotation marks and citations omitted). In arriving at this holding, the *Goodyear* Court leaned on principles drawn from the contempt doctrine that distinguish compensatory from punitive sanctions and the necessary procedures needed to impose each kind of sanction. *See id.* at 108 (citing *Bagwell,* 512 U.S. at 826-30). The Court found the award of $2.7 million not only included costs directly caused by Goodyear's misconduct, but also encompassed costs and fees that would have been incurred regardless of Goodyear's misconduct. *Id.* at 114. To the extent the costs and fees would have been incurred regardless of Goodyear's misconduct, the sanction award was no longer a compensatory award, and civil procedural protections were not sufficient. *See id.* at 108.

{35}     Federal jurisprudence prior to *Goodyear* offers additional support for the conclusion that punitive sanctions imposed pursuant to a court's inherent powers

mandate criminal-level procedural protections under the Fifth Amendment. *See F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc.*, 244 F.3d 1128, 1139 (9th Cir. 2001) (holding that "when a court uses its inherent powers to impose sanctions criminal in nature, it must provide the same due process protections that would be available in a criminal contempt proceeding"); *Mackler Prods., Inc. v. Cohen*, 146 F.3d 126, 129-30 (2d Cir. 1998) ("[T]he imposition of a sufficiently substantial [$10,000] punitive sanction [imposed pursuant to inherent authority] requires that the person sanctioned receive the procedural protections appropriate to a criminal case.").[5] Both *Hanshaw* and *Mackler* recognized there are significant differences between the imposition of punitive sanctions and punitive contempt, but reasoned punitive sanctions and contempt raise certain similar concerns:

> "Whether or not a finding of contempt is involved, unfairness and abuse are possible, especially if courts were to operate without any framework of rules or cap on their power to punish. In either case, the individual bears the risk of substantial punishment by reason of obstructive or disobedient conduct, as well as of vindictive pursuit by an offended judge."

*Hanshaw*, 244 F.3d at 1139 (quoting *Mackler*, 146 F.3d at 130). Following this reasoning, both the *Hanshaw* and *Mackler* Courts held the punitive sanctions

---

[5]We recognize the *Mackler* Court did not address a court's ability to levy *modest* punitive sanctions without the protections of criminal procedures. *See Mackler* 146 F.3d at 130 n.2.

imposed pursuant to the courts' inherent powers warranted the same due process protections that would be available in a punitive contempt proceeding. *Hanshaw*, 244 F.3d at 1139; *Mackler*, 146 F.3d at 130.

**4.    Ferguson was not afforded due process to the extent the sanctions were imposed pursuant to inherent powers**

{36}    In accordance with the Fifth Amendment due process standards articulated in *Goodyear*, we hold punitive sanctions imposed pursuant to a court's inherent powers are circumscribed by our contempt law and therefore require criminal-level due process protections. However, we clarify that with sanctions levied through inherent powers that would not fit neatly within the contempt sanctioning scheme, such as outright dismissal of a case, requisite procedures are left to the discretion of the court. *See Chambers*, 501 U.S. at 44-45 (stating that outright dismissal of a case is a valid, though "severe," sanction); *id.* at 46 (stating that because inherent powers extend to a full range of litigation abuse that other sanctioning "mechanisms" do not reach, the inherent power must "continue to exist to fill in the interstices").

{37}    In arriving at this holding, we expand on the reasoning articulated in *Hanshaw* and *Mackler* by noting the contempt power is a fundamental and prominent component of a court's inherent powers, and much disfavored conduct punishable pursuant to inherent powers will often be punishable by contempt. *See Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980) ("The most prominent of these

[inherent powers] is the contempt sanction."). This being the case, to permit courts to impose punitive sanctions under inherent powers when those same sanctions would warrant additional due process protections if imposed under contempt powers would frequently create a loophole through which courts could impose non-compensatory, non-coercive punitive contempt sanctions without criminal-level due process simply by invoking inherent powers. This concern is exacerbated by the fact that "[c]ontumacy often strikes at the most vulnerable and human qualities of a judge's temperament." *Concha*, 2011-NMSC-031, ¶ 29. We do not think it wise to give a potentially offended judge—often understandably so—the decision about what manner of due process protections to afford the offender, especially when the nature of the punished conduct renders additional due process protections all the more important to promote accurate fact-finding. *See Bagwell*, 512 U.S. at 831 (concluding the nature of contumacy and the potential for an "offended judge" present a compelling argument for why criminal (or punitive) contemnors—even more so than "ordinary" criminal defendants—are entitled to a jury trial as a protection against the arbitrary exercise of official power).

{38}     Accordingly, we hold Ferguson was not afforded due process to the extent the punitive sanctions were imposed pursuant to inherent powers, and consequently the

Court of Appeals' majority erred in holding inherent powers were a valid alternative basis for the sanctions.

**D.    Rule 11 Was a Valid Alternative Basis for the Sanctions Order**

{39}    Ferguson did not challenge the district court's Rule 11 basis for the sanctions before the Court of Appeals. Nonetheless, the Court of Appeals held the sanctions were not an abuse of discretion under Rule 11. *Butler*, A-1-CA-39546, mem. op. ¶¶ 9-10, 12. In this Court, Ferguson does not argue that the Court of Appeals erred in finding no abuse of discretion under Rule 11. Rather, he claims because he was deprived of due process to the extent the sanctions were imposed under the district court's contempt powers, he was necessarily deprived of due process to the extent those same sanctions were imposed under Rule 11. We address this argument and conclude due process requirements under Rule 11 are not coterminous with those for contempt. Accordingly, Ferguson was not *necessarily* deprived of due process under Rule 11. Because he does not challenge the Rule 11 basis for abuse of discretion or articulate how he was deprived of due process specifically under Rule 11 besides stating that the sanctions were punitive, we affirm the district court and Court of Appeals on Rule 11 grounds. We share Judge Duffy's concerns, however, about the scope of misconduct the Court of Appeals majority included in its Rule 11

holding, and limit Ferguson's Rule 11 misconduct to his willful misstatements in documents. *Butler*, A-1-CA-39546, mem. op. ¶ 25 (Duffy, J., dissenting).

**1.      Standard of review**

{40}      We typically review all aspects of the district court's imposition of sanctions under Rule 11 for an abuse of discretion. *See Rivera v. Brazos Lodge Corp.*, 1991-NMSC-030, ¶ 16, 111 N.M. 670, 808 P.2d 955. However, to resolve the issue raised by Ferguson we must solely answer the question whether punitive sanctions that warrant criminal-level due process protections under our contempt law can be imposed under Rule 11 without such protections. This is a question of law, and thus our review is de novo. *Cordova*, 2004-NMSC-026, ¶ 10.

**2.      Due process requirements for Rule 11 are not coterminous with those for contempt**

{41}      Under Rule 11, attorneys or parties who sign a pleading, motion, or other paper certify that they have read it and "that to the best of [their] knowledge, information, and belief, there is good ground to support it." Rule 1-011(A). The primary goal of Rule 11 is to deter baseless filings in district court, and the rule was also designed to encourage honesty in the bar when bringing and defending actions. *Rivera*, 1991-NMSC-030, ¶¶ 13-14. For a willful violation of Rule 11, "an attorney or party may be subjected to appropriate disciplinary or other action." Rule 1-011(A). Rule 11 "sanctions are intended to deter future litigation abuse, punish

present litigation abuse, compensate victims of litigation abuse, . . . streamline court dockets[,] and facilitate case management." *See Rivera*, 1991-NMSC-030, ¶ 14.

{42} Rule 11 seeks to punish a different quality of misconduct than contempt. *Cf. Eisenberg v. Univ. of N.M.*, 936 F.2d 1131, 1137 (10th Cir. 1991) (discussing how "'[a] violation of [Fed. R. Civ. P. 11] is fundamentally different from an infraction of criminal contempt'" (citation omitted)). As previously discussed, courts exercise their contempt power to preserve order and decorum, and to ensure parties comply with lawful mandates. *Concha*, 2011-NMSC-031, ¶ 23; § 34-1-2; *cf.* 18 U.S.C. § 401 (giving a federal court power to punish contempt "as (1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice; (2) Misbehavior of any of its officers in their official transactions; (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command"). While some Rule 11 violations may share qualities with contemptuous conduct, a Rule 11 violation will not necessarily strike at the order, decorum, or dignity of the court, nor run afoul of a lawful mandate of the court, nor obstruct justice. *Cf. Eisenberg*, 936 F.2d at 1133, 1137 (holding an attorney's "failure to conduct an adequate inquiry into the truth and accuracy" of allegations in her motion for new trial violated Fed. R. Civ. P. 11, but did not amount to conduct that upset order, dignity, or decorum or obstructed justice, and consequently did not "rise to this level" of contempt). Rather,

Rule 11 offenders primarily burden their opponents by forcing "expenditure of time and resources in responding to ill-founded pleadings or other papers." *See Rivera*, 1991-NMSC-030, ¶ 14. Offenders also strain valuable judicial resources by interposing delay in pending litigation and potentially inundating the courts with frivolous litigation. *See* 5A Charles Alan Wright, Arthur R. Miller, & A. Benjamin Spencer, *Federal Practice and Procedure* § 1331 at 310-11 & ns. 16-17 (4th ed. 2018) (discussing how the 1983 amendments to Fed. R. Civ. P. 11 were responses to the concern about the "litigation explosion" of the early 1980s). These evils, though inconsiderate of the court, are of a different quality than contemptuous acts that are an affront to the court.

{43}     Considering the different natures of contempt and Rule 11, due process requirements for each are weighed against different countervailing interests. *Cf. Donaldson v. Clark*, 819 F.2d 1551, 1559 (11th Cir. 1987) ("The major goals of [Fed. R. Civ. P. 11] are to rid the courts of meritless litigation and to reduce the growing cost and burdensomeness of civil litigation."); *Eisenberg*, 936 F.2d at 1137 ("[I]t would be counterproductive to the intent of [Fed. R. Civ. P. 11] to require [criminal-level] procedures."); *In re DeVille*, 361 F.3d 539, 551-53 & 553 n.9 (9th Cir. 2004) (reasoning the deterrent goal of sanctions imposed under Fed. R.

Bankruptcy Proc. 9011—analogous to Fed. R. Civ. P. 11 sanctions—did not warrant criminal-level procedures because deterrence is a different goal than punishment).

{44}   The United States Supreme Court has pointed out that when evaluating what process is due there comes a point when "the benefit of an additional safeguard to the individual affected by the [government] action[,] and to society in terms of increased assurance that the action is just, may be outweighed by the cost." *Mathews v. Eldridge*, 424 U.S. 319, 348 (1976). For contempt, due process protections are balanced against the extraordinary and broad power of the court to punish contumacy and disobedience. The breadth of the contempt power, in addition to the nature of contumacious acts that have the potential to test the patience of any judge, demand well-delineated due process protections to ensure the power is not abused. *See Concha*, 2011-NMSC-031, ¶ 29; *Bagwell*, 512 U.S. at 831. Rule 11, however, is limited to baseless filings with the court. And while Rule 11 violations may be vexatious, they do not strike at the authority and dignity of the court in a way that makes the sanctioning power ripe for abuse. Consequently, the exercise of Rule 11 power does not require as heavy a due process counterweight as does contempt. Further, to uniformly follow punitive contempt procedures whenever imposing monetary sanctions would be counterproductive to the goal of Rule 11 by requiring extensive collateral procedures as prerequisites for the imposition of sanctions. *Cf.*

*Donaldson*, 819 F.2d at 1559 (concluding that in addition to the fact that neither the plain language of Fed. R. Civ. P. 11 nor the committee note mandated additional due process protections when imposing a punitive monetary fine under Fed. R. Civ. P. 11, the fear of spawning "satellite litigation" by requiring a second trial whenever punitive monetary fines may be imposed was enough to cause the vitality of Fed. R. Civ. P. 11 to be "drained away").

{45}    We conclude due process requirements under Rule 11 are not coterminous with those for contempt. This means that punitive sanctions imposed under contempt powers that would entitle an indirect punitive contemnor to criminal-level due process protections will not necessarily warrant criminal-level due process protections if imposed under Rule 11. This also means the remedial-punitive distinction that controls what level of due process is afforded under indirect punitive contempt does not control the level of due process required under Rule 11. Ultimately, "[d]etermining [what level of] process is due in a Rule 11 case requires an application of familiar principles of due process." *Rivera*, 1991-NMSC-030, ¶ 23. In *Rivera*, we clarified as follows:

> "No set rule can be stated to govern all Rule 11 cases; the standard is necessarily flexible to cover varying situations. The specific dictates of due process will be determined by the interaction of several factors. These factors include but are not limited to: the interests of attorneys and parties in having a specific sanction imposed only when justified; the risk of an erroneous imposition of sanctions under the procedures

used and the probable value of additional notice and hearing; and the interests of the court in efficiently monitoring the use of the judicial system and the fiscal and administrative burdens that additional procedural requirements would entail. Providing due process will ensure that Rule 11 will not be applied arbitrarily, that erroneous application of the rule will be minimized, and that creative legal arguments and vigorous advocacy will not be stifled."

1991-NMSC-030, ¶ 24 (quoting *Donaldson*, 819 F.2d at 1558). We recognize there may be a rare case where Rule 11 sanctions warrant criminal-level due process protections. Absent a specific argument[6] by Ferguson for why this is that case, other than his assertion that the punitive nature of the sanctions automatically entitles him to criminal-level due process, we leave the due process requirements under Rule 11 in this case to the sound—and yet unchallenged—discretion of the district court.

{46} We note and acknowledge our holding in this case puts due process requirements for sanctions imposed under inherent powers in lockstep with those for contempt but does not bind Rule 11 in the same way. To the extent Rule 11 is a

---

[6]In his reply brief to this Court, Ferguson relied on *Dona Ana Sav. & Loan Ass'n, F.A. v. Mitchell*, a Court of Appeals case holding a $250 punitive fine imposed under Rule 11 did not warrant criminal-level due process protections. 1991-NMCA-054, ¶¶ 13-16, 113 N.M. 576, 829 P.2d 655. Ferguson argued *Dona Ana* is distinguishable because the fine in that case was "only $250, far less than the $50,000 fine imposed here and well within the [remedial] contempt framework." However, the *Dona Ana* Court did not rely on the modest amount of the fine in arriving at its conclusion, nor was the $250 fine within the remedial contempt framework. Rather, the $250 fine was solely punitive. *Id.* ¶ 9. Accordingly, Ferguson's reliance on *Dona Ana* is misplaced and unsound.

creature of a court's inherent powers or exists within the larger sphere of inherent powers, our holding may appear inconsistent. However, because Rule 11 addresses a narrow quality of misconduct, is driven by unique policy goals, and carries less risk for abuse than the type of conduct that is commonly addressed through contempt powers, Rule 11 sanctions demand different due process considerations, and stand as an exception to the rule that inherent powers sanctions are circumscribed by our contempt law.[7]

### 3. Rule 11 was a proper basis for the sanctions only with regard to Ferguson's willful misstatements in documents filed with the court

{47} The Sanctions Order punished Ferguson under Rule 11 for his "direct involvement . . . and . . . willful misstatements in documents filed with th[e district c]ourt, as well as his omissions and arguments and testimony presented to the [district c]ourt throughout this proceeding." To support its Rule 11 holding, the Court of Appeals stated it was "undisputed that [Ferguson] knowingly violated the district court's oral ruling and the preliminary injunction requiring [him] to maintain the status quo of the Ferrari's ownership." *Butler*, A-1-CA-39546, mem. op. ¶ 12. The Court of Appeals further stated it was "undisputed that [Ferguson] willfully hid

---

[7]We recognize Rule 1-037 is yet another source of authority for sanctions. The contours of that rule along with its associated due process standards are outside the scope of this opinion.

the alteration to the Ferrari's ownership from the district court and purposefully introduced into evidence 'an old version of the Ferrari's [c]ertificate of [t]itle . . . , which . . . was a continuation of a fraud upon the [district] court to deceive the [c]ourt into thinking the [p]reliminary [i]njunction had been complied with.'" *Id.* (alterations and omissions in original).

{48} The scope of conduct listed in the Sanctions Order and discussed by the Court of Appeals, *see id.*, was too broad. Rule 11 is limited to pleadings, motions, and other papers filed with the court. *See* Rule 1-011(A). After all, the primary purpose of Rule 11 "is to deter baseless filings." *Rivera*, 1991-NMSC-030, ¶ 14. Therefore, the Sanctions Order was valid under Rule 11 to the extent it contemplated "willful misstatements in documents" filed with the court. The district court's further reliance on "omissions and arguments and testimony" cannot support a Rule 11 sanction unless those omissions, arguments, and testimonial statements appeared in filed papers, which the record does not support. Even the Ferrari's certificate of title, while it is a "paper," was not a filing with the court. Rather, it was a fraudulent and misleading piece of evidence, and so it is not the type of paper contemplated by Rule 11.

{49}     Therefore, we affirm the Court of Appeals' upholding of the district court's sanctions on Rule 11 grounds only on the basis of the "willful misstatements in documents" Ferguson filed with the court.

## III.   CONCLUSION

{50}     We affirm the Court of Appeals in part and reverse in part. The Court of Appeals is reversed in part in holding that Ferguson was required to file a motion to reconsider to preserve issues for appeal from a final order when the errors only became apparent on the face of the order. The Court of Appeals is also reversed in part in holding that inherent powers were a valid alternative basis for the Sanctions Order. We affirm the Court of Appeals' conclusion that Rule 11 was a valid alternative basis for the Sanctions Order, but limit the Rule 11 misconduct to Ferguson's willful misstatements in documents. We remand this case to the district court for proceedings consistent with this opinion.

{51}     **IT IS SO ORDERED.**

_____

**C. SHANNON BACON, Justice**

**WE CONCUR:**

_____
**DAVID K. THOMSON, Chief Justice**

_____
**MICHAEL E. VIGIL, Justice**

_____
**JULIE J. VARGAS, Justice**

_____
**BRIANA H. ZAMORA, Justice**